**MAYER·BROWN**

Mayer Brown LLP
1221 Avenue of the Americas
New York, New York 10020-1001

Main Tel +1 212 506 2500
Main Fax +1 212 262 1910

www.mayerbrown.com

**Christopher J. Houpt**

Direct Tel +1 212 506 2380
Direct Fax +1 212 849 5830

choupt@mayerbrown.com

March 24, 2015

BY ECF

Honorable Frederic Block
United States District Court for the
    Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Wexler v. AT&T Corp.*, No. 15-cv-686 (FB-VVP)

Dear Judge Block:

I represent defendant AT&T Corp. ("AT&T") in the above-referenced action. AT&T respectfully seeks to file a motion to compel arbitration of plaintiff Eve Wexler's claims, and accordingly we request a pre-motion conference as required by Section 2.A of this Court's Individual Motion Practices. (We filed a similar letter yesterday before the case was transferred to Your Honor's docket.)

The basis for the motion is straightforward: Dr. Wexler is a customer of AT&T Mobility LLC ("AT&T Mobility"), an affiliate of defendant AT&T, and has agreed to resolve any disputes with AT&T Mobility or its affiliates by arbitration on an individual basis. The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires enforcement of that arbitration agreement, as the United States Supreme Court and courts around the country have concluded in numerous cases. *See, e.g., AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). For the reasons discussed below, AT&T seeks to file a motion to compel Dr. Wexler to arbitrate her claims against AT&T on an individual basis in accordance with her agreement.

1.      **Dr. Wexler agreed to arbitrate her claims against AT&T.**

AT&T Mobility's business records establish that Dr. Wexler has a mobile phone account with AT&T Mobility with a phone number ending in -0000 (the phone number at issue in her complaint). On October 29, 2008, Dr. Wexler accepted AT&T Mobility's service agreement, including the arbitration provision set forth in the terms and conditions of that agreement. The service agreement's terms require Dr. Wexler to "arbitrate all disputes and claims between us" on an individual basis. The arbitration agreement defines "us" broadly to include "affiliates" of AT&T Mobility, one of which is defendant AT&T Corp.

In March 2009, AT&T Mobility revised its arbitration provision slightly and provided notice of that revision to its customers, including Dr. Wexler, with their monthly bills. Like earlier versions of the arbitration provision, the revised provision requires that AT&T Mobility and its customers arbitrate all disputes between them (including all disputes with AT&T Mobility's

March 24, 2015
Page 2

"affiliates") on an individual basis. A copy of the revised arbitration provision is attached to this letter as Exhibit 1.

Despite her arbitration agreement, Dr. Wexler filed this putative class action against AT&T. On March 12, 2015, Dr. Wexler amended her complaint. Dkt. # 4. Because "an amended pleading ordinarily supersedes the original and renders it of no legal effect" (*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation and internal quotation marks omitted)), this pre-motion letter serves to respond to the Amended Complaint.

2.  **Dr. Wexler's arbitration agreement is enforceable under the FAA.**

The FAA requires the enforcement of Dr. Wexler's arbitration agreement. The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. Both criteria are met here.

Under the FAA, Dr. Wexler's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the U.S. Supreme Court has explained, "[t]he overarching purpose of the FAA * * * is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Concepcion*, 131 S. Ct. at 1748. And this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary." *Id.* at 1749 (internal quotation marks omitted). When a district court concludes that a dispute is arbitrable, court proceedings concerning those claims must be stayed and the matter referred to arbitration. *See* 9 U.S.C. § 3 (providing for stay).

Here, no grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) Dr. Wexler's arbitration agreement. Her operative agreement is materially identical to the one that the Supreme Court considered and upheld in *Concepcion*. Compare Exhibit 1 with *Concepcion*, 131 S. Ct. at 1744 & n.3. In light of *Concepcion*, courts around the country have confirmed that the FAA requires enforcement of AT&T Mobility's arbitration provision, including in disputes involving affiliates of and entities related to AT&T Mobility. *See, e.g., Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212-16 (11th Cir. 2011). Indeed, the Supreme Court and federal courts around the country have enforced arbitration agreements that do not contain all of the pro-consumer features of the AT&T Mobility provision. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013); *Adams v. AT&T Mobility LLC*, 816 F. Supp. 2d 1077 (W.D. Wash. 2011), *aff'd*, 524 F. App'x 322 (9th Cir. 2013); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *7 (W.D. Wash. Mar. 22, 2013); *Vernon v. Qwest Commcn's Int'l, Inc.*, 925 F. Supp. 2d 1185, 1195 (D. Colo. 2013).

3.  **Dr. Wexler's claim is within the scope of her arbitration agreement.**

Dr. Wexler's arbitration agreement fully encompasses her dispute with AT&T. The plain language of the agreement requires arbitration of "**all disputes and claims** between us"—language that is all-encompassing in scope. And the agreement defines the term "us" to include

March 24, 2015
Page 3

both AT&T Mobility *and* its "affiliates." An "affiliate" is "related to another corporation by shareholdings or other means of control," such as those with a common "parent entity." *Crewe v. Rich Dad Educ., LLC*, 884 F. Supp. 2d 60, 75 (S.D.N.Y. 2012) (enforcing arbitration) (citing BLACK'S LAW DICTIONARY 63 (8th ed. 2004)). AT&T Corp. is an affiliate of AT&T Mobility because the two share common ownership; both are wholly-owned subsidiaries of AT&T Inc.

This broad language is enough, but the agreement goes on to specify that the term "all disputes and claims" "includes, but is not limited to * * * claims arising out of or relating to any aspect of the relationship between us," including those claims "based in * * * statute." Here, Dr. Wexler alleges that an AT&T entity called her on her AT&T Mobility phone. *See* Am. Compl. ¶ 14. And she claims that AT&T Mobility's affiliate (AT&T) violated the Telephone Consumer Protection Act by calling her AT&T Mobility number. That is a dispute that plainly "relat[es] to * * * the relationship between" Dr. Wexler and "us"—*i.e.*, AT&T Mobility and any other affiliated AT&T entity.

For these reasons, we respectfully request that AT&T be permitted to file a motion to compel arbitration, along with supporting declarations and business records.

**4.      The parties' agreed briefing schedule.**

The parties have agreed to the following briefing schedule:

- Opening motion papers shall be served on April 13, 2015;

- Any opposition papers shall be served on May 13, 2015;

- Any reply paper shall be served on May 29, 2015.

On May 29, 2015, AT&T shall file the parties' fully briefed motion papers pursuant to Section 2.D of this Court's Individual Motion Practices.

Thank you for considering our request for a pre-motion conference.

Sincerely,


/s/ Christopher J. Houpt
Christopher J. Houpt

cc:     Shimson Wexler (counsel for Plaintiff)
        Archis A. Parasharami (co-counsel for Defendants)

# Exhibit 1

made before an arbitrator was selected, then AT&T will:

- pay you the amount of the award or $10,000 ("the alternative payment"), whichever is greater; and

- pay your attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs) that your attorney reasonably accrues for investigating, preparing, and pursuing your claim in arbitration ("the attorney premium").

If AT&T did not make a written offer to settle the dispute before an arbitrator was selected, you and your attorney will be entitled to receive the alternative payment and the attorney premium, respectively, if the arbitrator awards you any relief on the merits. The arbitrator may make rulings and resolve disputes as to the payment and reimbursement of fees, expenses, and the alternative payment and the attorney premium at any time during the proceeding and upon request from either party made within 14 days of the arbitrator's ruling on the merits.

(5) The right to attorneys' fees and expenses discussed in paragraph (4) supplements any right to attorneys' fees and expenses you may have under applicable law. Thus, if you would be entitled to a larger amount under the applicable law, this provision does not preclude the arbitrator from awarding you that amount. However, you may not recover duplicative awards of attorneys' fees or costs. Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award.

(6) The arbitrator may award declaratory or injunctive relief only in favor of the individual party seeking relief and only to the extent necessary to provide relief warranted by that party's individual claim. **YOU AND AT&T AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING.** Further, unless both you and AT&T agree otherwise, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding. If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void.

(7) Notwithstanding any provision in this Agreement to the contrary, we agree that if AT&T makes any future change to this arbitration provision (other than a change to the Notice Address) during your Service Commitment, you may reject any such change by sending us written notice within 30 days of the change to the Arbitration Notice Address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision.




## NOTICE OF REVISED ARBITRATION CLAUSE

**DISPUTE RESOLUTION BY BINDING ARBITRATION
Please read this carefully. It affects your rights.**

**Summary:**
Most customer concerns can be resolved quickly and to the customer's satisfaction by calling our customer service department at 1-800-331-0500. **In the unlikely event that AT&T's customer service department is unable to resolve a complaint you may have to your satisfaction (or if AT&T has not been able to resolve a dispute it has with you after attempting to do so informally), we each agree to resolve those disputes through binding arbitration or small claims court instead of in courts of general jurisdiction.** Arbitration is more informal than a lawsuit in court. Arbitration uses a neutral arbitrator instead of a judge or jury, allows for more limited discovery than in court, and is subject to very limited review by courts. Arbitrators can award the same damages and relief that a court can award. **Any arbitration under this Agreement will take place on an individual basis; class arbitrations and class actions are not permitted.** For any non-frivolous claim that does not exceed $75,000, AT&T will pay all costs of the arbitration. Moreover, in arbitration you are entitled to recover attorneys' fees from AT&T to at least the same extent as you would be in court.

In addition, under certain circumstances (as explained below), AT&T will pay you more than the amount of the arbitrator's award and will pay your attorney (if any) twice his or her reasonable attorneys' fees if the arbitrator awards you an

47400_65933  1   2/11/09   2:32:14 PM

amount that is greater than what AT&T has offered you to settle the dispute.

**ARBITRATION AGREEMENT**

(1) AT&T and you agree to arbitrate **all disputes and claims** between us. This Agreement to arbitrate is intended to be broadly interpreted. It includes, but is not limited to:

- claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory;

- claims that arose before this or any prior Agreement (including, but not limited to, claims relating to advertising);

- claims that are currently the subject of purported class action litigation in which you are not a member of a certified class; and

- claims that may arise after the termination of this Agreement.

References to "AT&T," "you," and "us" include our respective subsidiaries, affiliates, agents, employees, predecessors in interest, successors, and assigns, as well as all authorized or unauthorized users or beneficiaries of services or Devices under this or prior Agreements between us. Notwithstanding the foregoing, either party may bring an individual action in small claims court. This Arbitration Agreement does not preclude you from bringing issues to the attention of federal, state, or local agencies, including, for example, the Federal Communications Commission. Such agencies can, if the law allows, seek relief against us on your behalf. **You agree that, by entering into this Agreement, you and AT&T are each waiving the right to a trial by jury or to participate in a class action.** This Agreement evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision. This arbitration provision shall survive termination of this Agreement.

(2) A party who intends to seek arbitration must first send to the other, by certified mail, a written Notice of Dispute ("Notice"). The Notice to AT&T should be addressed to: General Counsel, AT&T, 1025 Lenox Park Blvd., Atlanta, GA 30319 ("Notice Address"). The Notice must (a) describe the nature and basis of the claim or dispute; and (b) set forth the specific relief sought ("Demand").

If AT&T and you do not reach an agreement to resolve the claim within 30 days after the Notice is received, you or AT&T may commence an arbitration proceeding. During the arbitration, the amount of any settlement offer made by AT&T or you shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or AT&T is entitled. You may download or copy a form Notice and a form to initiate arbitration at att.com/arbitration-forms.

(3) After AT&T receives Notice at the Notice Address that you have commenced arbitration, it will promptly reimburse you for your payment of the filing fee, unless your claim is for greater than $75,000. (The filing fee currently is $125 for claims under $10,000, but is subject to change by the arbitration provider. If you are unable to pay this fee, AT&T will pay it directly upon receiving a written request at the Notice Address.) The arbitration will be governed by the Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by this Agreement, and will be administered by the AAA. The AAA Rules are available online at www.adr.org, by calling the AAA at 1-800-778-7879, or by writing to the Notice Address. (You may obtain information that is designed for non-lawyers about the arbitration process at http://att.com/arbitration-information.) The arbitrator is bound by the terms of this Agreement. All issues are for the arbitrator to decide, except that issues relating to the scope and enforceability of the arbitration provision are for the court to decide. Unless AT&T and you agree otherwise, any arbitration hearings will take place in the county (or parish) of your billing address. If your claim is for $10,000 or less, we agree that you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the AAA Rules. If your claim exceeds $10,000, the right to a hearing will be determined by the AAA Rules. Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based. Except as otherwise provided for herein, AT&T will pay all AAA filing, administration, and arbitrator fees for any arbitration initiated in accordance with the notice requirements above. If, however, the arbitrator finds that either the substance of your claim or the relief sought in the Demand is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b)), then the payment of all such fees will be governed by the AAA Rules. In such case, you agree to reimburse AT&T for all monies previously disbursed by it that are otherwise your obligation to pay under the AAA Rules. In addition, if you initiate an arbitration in which you seek more than $75,000 in damages, the payment of these fees will be governed by the AAA rules.

(4) If, after finding in your favor in any respect on the merits of your claim, the arbitrator issues you an award that is greater than the value of AT&T's last written settlement offer