**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

EVE WEXLER, on behalf of herself and all others
similarly situated,

Plaintiff,

v.

AT&T CORP.,

Defendant.

15-CV-0686 (FB/VVP)

## DEFENDANT AT&T CORP.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 1

    A.   Dr. Wexler Agrees To Arbitrate Her Disputes With AT&T On An Individual
        Basis. .................................................................................................................1

    B.   The Consumer-Friendly Features Of Dr. Wexler's Arbitration Agreement. ................3

    C.   Plaintiff Sues AT&T Over Calls Made To Her Mobile Phone. ....................................4

ARGUMENT ................................................................................................................. 5

    A.   Dr. Wexler Entered Into An Arbitration Agreement That Is Enforceable Under
        The FAA. ............................................................................................................5

    B.   Dr. Wexler's Claim Is Within The Scope Of Her Arbitration Agreement. ..................8

CONCLUSION .............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Qiagen Gaithersburg, Inc.*,
  2010 WL 1539952 (N.D. Ill. Apr. 15, 2010) .........................................................................10

*Adams v. AT&T Mobility, LLC*,
  816 F. Supp. 2d 1077 (W.D. Wash. 2011)...............................................................................7

*Am. Express Co. v. Italian Colors Rest.*,
  133 S. Ct. 2304 (2013)..............................................................................................................7

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
  2011 WL 2886407 (N.D. Cal. July 19, 2011)..........................................................................7

*In re Apple & AT&TM Antitrust Litig.*,
  826 F. Supp. 2d 1168 (N.D. Cal. 2011) ...................................................................................6

*In re Apple iPhone 3G Prods. Liab. Litig.*,
  859 F. Supp. 2d 1084 (N.D. Cal. 2012) ...................................................................................6

*AT&T Mobility LLC v. Concepcion*,
  131 S. Ct. 1740 (2011)..................................................................................................*passim*

*AT&T Techs., Inc. v. Comm'ns Workers of Am.*,
  475 U.S. 643 (1986)................................................................................................................10

*Bank of Am., N.A. v. Diamond State Ins. Co.*,
  2002 WL 31720328 (S.D.N.Y. Dec. 4, 2002) .........................................................................9

*Blau v. AT&T Mobility*,
  2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ................................................................................6

*Boyer v. AT&T Mobility Servs., LLC*,
  2011 WL 3047666 (S.D. Cal. July 25, 2011) ..........................................................................7

*Carvant Fin. LLC v. Autoguard Advantage Corp.*,
  958 F. Supp. 2d 390 (E.D.N.Y. 2013) .....................................................................................7

*Collins & Aikman Prods. Co. v. Bld. Sys., Inc.*,
  58 F.3d 16 (2d Cir. 1995) .........................................................................................................9

*Coneff v. AT&T Corp.*,
  673 F.3d 1155 (9th Cir. 2012) ..................................................................................................6

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Coppock v. Citigroup, Inc.*,
  2013 WL 1192632 (W.D. Wash. Mar. 22, 2013) .....................................................7

*Cruz v. Cingular Wireless, LLC*,
  648 F.3d 1205 (11th Cir. 2011) .................................................................................6

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995)..................................................................................................10

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991)......................................................................................................6

*Guerrero v. Equifax Credit Info. Servs., Inc.*,
  2012 WL 7683512 (C.D. Cal. Feb. 24, 2012)............................................................7

*Hancock v. Am. Tel. & Tel. Co.*,
  701 F.3d 1248 (10th Cir. 2012) .................................................................................7

*Hendricks v. AT&T Mobility, LLC*,
  823 F. Supp. 2d 1015 (N.D. Cal. 2011) .....................................................................6

*Hodsdon v. DirecTV, LLC*,
  2012 WL 5464615 (N.D. Cal. Nov. 8, 2012) .............................................................7

*Kaltwasser v. AT&T Mobility LLC*,
  812 F. Supp. 2d 1042 (N.D. Cal. 2011) .....................................................................6

*Laster v. T-Mobile USA, Inc.*,
  2013 WL 4082682 (S.D. Cal. July 19, 2013) ............................................................6

*Lee v. Deng*,
  — F. Supp. 3d —, 2014 WL 6617294 (N.D. Ohio Nov. 21, 2014)........................10

*Makarowski v. AT&T Mobility, LLC*,
  2009 WL 1765661 (C.D. Cal. 2009)........................................................................11

*McGreal v. AT&T Corp.*,
  892 F. Supp. 2d 996 (N.D. Ill. 2012) ........................................................................6

*Medscript PBM, Inc. v. Procare PBM, Inc.*,
  2008 WL 4941002 (E.D. Mo. Nov. 17, 2008)..........................................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).....................................................................................................10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nelson v. AT&T Mobility LLC*,
    2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) ...............................................................6

*O'Conner v. AT&T Corp.*,
    2013 WL 3107496 (M.D. La. June 18, 2013)...............................................................6

*Oppenheimer & Co. v. Neidhardt*,
    56 F.3d 352 (2d Cir. 1995)...............................................................8

*Ragone v. Atl. Video at Manhattan Ctr.*,
    595 F.3d 115 (2d Cir. 2010)...............................................................8

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...............................................................8

*Sherman v. AT&T Inc.*,
    2012 WL 1021823 (N.D. Ill. Mar. 26, 2012)...............................................................7

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
    542 F.3d 354 (2d Cir. 2008)...............................................................8

*United States v. Corum*,
    362 F.3d 489 (8th Cir. 2004) ...............................................................5

*United States v. Mejia*,
    545 F.3d 179 (2d Cir. 2008)...............................................................5

*Vernon v. Qwest Commcn's Int'l, Inc.*,
    925 F. Supp. 2d 1185 (D. Colo. 2013)...............................................................7

**Statutes, Rules and Regulations**

Federal Arbitration Act
    9 U.S.C. §§ 1 *et seq*...............................................................1
    9 U.S.C. § 2 ...............................................................5, 6
    9 U.S.C. § 3 ...............................................................5, 6

Telephone Consumer Protection Act
    47 U.S.C. § 227 ...............................................................1

Federal Rule of Civil Procedure 11 ...............................................................3

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) ...............................................................8

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002)......................................................8

## INTRODUCTION

Plaintiff Eve Wexler is a customer of AT&T Mobility LLC ("AT&T Mobility"), which is an affiliate of defendant AT&T Corp. ("AT&T").  In this lawsuit, Dr. Wexler alleges that an AT&T entity improperly called her on her wireless phone in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  But her dispute does not belong in this Court:  When Dr. Wexler obtained wireless service from AT&T Mobility, she agreed that she would resolve any disputes that she had with AT&T Mobility *and its affiliates* by arbitration on an individual basis.

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, requires enforcement of that arbitration agreement.  The Supreme Court and courts around the country have upheld AT&T Mobility's arbitration provision.  *See, e.g., AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  Moreover, Dr. Wexler's dispute falls within the broad scope of her arbitration agreement.  She alleges that an affiliate of AT&T Mobility improperly called her on her wireless phone, and she obtained wireless service for that phone from AT&T Mobility.  And while Dr. Wexler has raised various objections to the enforcement of her arbitration agreement, for the reasons explained below those objections are all meritless.  Accordingly, the Court should compel arbitration and stay litigation of Dr. Wexler's claims against AT&T.

## BACKGROUND

### A.    Dr. Wexler Agrees To Arbitrate Her Disputes With AT&T On An Individual Basis.

According to AT&T Mobility's records, Dr. Wexler has a mobile phone account with AT&T with a mobile phone number ending in -0000.  Decl. of Veronica Plourde ¶¶ 3-4. According to AT&T Mobility's records, on October 29, 2008, Dr. Wexler (or an authorized user on her account) visited AT&T Mobility's website, provided the username and password

associated with Dr. Wexler's account, and accepted AT&T Mobility's Terms of Service, including the arbitration provision contained in those terms.  *Id.* ¶¶ 4-5.[1]  That person ordered an upgrade for an Apple iPhone 3G for service on AT&T Mobility's wireless network.  *See id.* ¶ 4 & Ex. 4.  In order to complete that transaction, the customer was required to check a box acknowledging that she was accepting the terms of AT&T Mobility's Wireless Service Agreement.  Decl. of David Bates ¶ 4 & Ex. 1.  The text of the relevant Wireless Service Agreement, including its terms and conditions, was displayed in a scrolling text box above the acknowledgment.  *Id*.  AT&T Mobility's records reflect that the Service Agreement was "Web Accepted" on that date.  Plourde Decl. ¶ 5 & Ex. 1.

The next day, a copy of the Customer Service Summary for the transaction (which includes the service agreement) was emailed to the "gmail.com" email address associated with Dr. Wexler's account.  *See* Plourde Decl. ¶ 4 & Exs. 2-4.  The terms of the service agreement require Dr. Wexler to "arbitrate all disputes and claims between us"—including disputes with AT&T Mobility's "affiliates"—on an individual basis.  Bates Decl. Ex. 2 at 10.

Pursuant to the change-in-terms provisions of the service agreement (*see* Bates Decl. Ex. 2 at 6-7), AT&T Mobility provided notice to its direct-billed customers—including Dr. Wexler—with their March 2009 monthly bills that AT&T was revising its arbitration provision.  *See* Decl. of Larry White ¶ 3 & Ex. 1.  Like earlier versions of the arbitration provision, the

---

[1]      The terms of Dr. Wexler's service agreement provide, under the heading "ACCOUNT ACCESS," that "[y]ou authorize us to provide information about and to make changes to your account, including adding new service, upon the direction of any person able to provide information we deem sufficient to identify you."  Bates Decl. Ex. 2 at 9.  The terms also define "'[y]ou' or 'your'" as "the person or entity that is the customer of record."  *Id*. at 1.  That person is Dr. Wexler, according to AT&T Mobility's records.  *See* Plourde Decl. Ex. 2 at 2.

revised provision requires that AT&T Mobility and its customers arbitrate all disputes between them on an individual basis.  Bates Decl. Ex. 2 at 1.[2]

**B.     The Consumer-Friendly Features Of Dr. Wexler's Arbitration Agreement.**

The arbitration provision in Dr. Wexler's operative agreement includes the following features that would facilitate the resolution of her claims (*see* White Decl. Ex. 1):

- **Cost-free arbitration**:  For claims up to $75,000, "AT&T will pay all [American Arbitration Association ('AAA')] filing, administration, and arbitrator fees" unless the arbitrator determines the customer's claim "is frivolous or brought for an improper purpose (as measured by the standards set forth in Federal Rule of Civil Procedure 11(b))";[3]

- **$10,000 minimum award**:  If the arbitrator issues an award in favor of a customer that is greater than "AT&T's last written settlement offer made before an arbitrator was selected," then "AT&T will * * * pay" the customer "$10,000" rather than any smaller arbitral award;

- **Double attorneys' fees**:  If the arbitrator awards the customer more than "AT&T's last written settlement offer made before an arbitrator was selected," then "AT&T will * * * pay [the customer's] attorney, if any, twice the amount of attorneys' fees, and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration";[4]

- **Small claims court option**:  Either party may bring a claim in small claims court as an alternative to arbitration;

---

[2]     AT&T Mobility also reminded its customers of the new arbitration provision with the following message on their March, April, and May 2009 bills, under the heading "**NOTICE OF REVISED ARBITRATION CLAUSE IN CONTRACT**": "We wish to inform you that, effective immediately, AT&T has revised the arbitration clause in your Wireless Service Agreement. For more information, please visit http://www.att.com/disputeresolution." Plourde Decl. Ex. 5 at 1, Ex. 6 at 1, Ex. 7 at 1.

[3]     Even if an arbitrator concludes that a customer's claim is frivolous, the AAA's consumer arbitration rules would cap the amount of costs that the customer would have to pay at $200. *See* Decl. of James Tierney Ex. 1 at 33 (AAA Consumer Arbitration Rules).

[4]     The provision for double attorneys' fees "supplements any right to attorneys' fees and expenses [the customer] may have under applicable law." White Decl. Ex. 1 § 5. Thus, even if an arbitrator were to award a customer less than the company's last settlement offer, the customer would be entitled to an attorneys' fee award to the same extent as if her individual claim had been brought in court.

3

- **Flexible consumer procedures**:  Arbitration will be conducted under the AAA's Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes, which the AAA designed with consumers in mind;

- **Choice of in-person, telephonic, or no hearing**:  For claims of $10,000 or less, the customer has the exclusive right to choose whether the arbitrator will conduct an in-person hearing, a telephonic hearing, or a "desk" arbitration in which "the arbitration will be conducted solely on the basis of documents submitted to the arbitrator";

- **Conveniently located hearing**:  Arbitration will take place "in the county * * * of [the customer's] billing address";

- **AT&T disclaims right to seek attorneys' fees**:  "Although under some laws AT&T may have a right to an award of attorneys' fees and expenses if it prevails in an arbitration, AT&T agrees that it will not seek such an award";

- **No confidentiality requirement**:  Either party may publicly disclose the arbitration and its result;

- **Full individual remedies available**:  The arbitrator can award any form of relief on an individualized basis (including statutory and punitive damages, attorneys' fees, and injunctions that would affect the claimant alone) that a court could award; and

- **Right to written decision**: "Regardless of the manner in which the arbitration is conducted, the arbitrator shall issue a reasoned written decision sufficient to explain the essential findings and conclusions on which the award is based."

**C.    Plaintiff Sues AT&T Over Calls Made To Her Mobile Phone.**

In violation of her arbitration agreement, Dr. Wexler filed this putative class action in February 2015, naming AT&T as a defendant.  Compl. ¶ 5.  She filed an amended complaint on March 12, 2015.  *See* Am. Compl. (Dkt. #4).  Dr. Wexler alleges that in October and December 2014, an AT&T entity used an automatic dialing machine to place calls to her mobile phone in violation of the TCPA.  *Id.* ¶¶ 9-26, 37-42.  She requests statutory damages and an injunction, and seeks to represent a putative nationwide class.  *Id.* ¶¶ 27-35 & p. 10.

AT&T filed a letter requesting a pre-motion conference as required by this Court's Individual Motion Practices.  Dkt. # 8.  Plaintiff filed a letter in response.  Dkt. # 9 ("Wexler Letter").

**ARGUMENT**

**A.    Dr. Wexler Entered Into An Arbitration Agreement That Is Enforceable Under The FAA.**

The FAA requires the enforcement of Dr. Wexler's arbitration agreement.  The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce."  9 U.S.C. § 2.  Both criteria are met here: (i) AT&T Mobility's arbitration provision is in writing (*see* pages 2-4, *supra*), and (ii) contracts for wireless service involve interstate commerce, because the "[u]se of an instrumentality of commerce, such as telephone lines, is * * * generally viewed as an activity that affects interstate commerce."  *United States v. Mejia*, 545 F.3d 179, 203 (2d Cir. 2008); *see also United States v. Corum*, 362 F.3d 489, 493 (8th Cir. 2004) ("It is well-established that telephones, even when used intrastate, are instrumentalities of interstate commerce.").  Indeed, Dr. Wexler's arbitration provision specifies that the contract "evidences a transaction in interstate commerce, and thus the Federal Arbitration Act governs the interpretation and enforcement of this provision."  White Decl. Ex. 1 § 1.

Under the FAA, Dr. Wexler's arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As the U.S. Supreme Court has explained, "[t]he overarching purpose of the FAA * * * is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings."  *Concepcion*, 131 S. Ct. at 1748.  And this "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state substantive or procedural policies to the contrary."  *Id.* at 1749 (internal quotation marks omitted).  When a district court concludes that a dispute is arbitrable, court proceedings concerning those claims must be stayed and the matter referred to arbitration.  *See* 9 U.S.C. § 3 (providing for stay); *see*

5

*also*, *e.g.*, *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991) (FAA "provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3").

Here, no grounds "exist at law or in equity for the revocation of" (9 U.S.C. § 2) Dr. Wexler's arbitration agreement. Her operative agreement is materially identical to the one that the Supreme Court considered and upheld in *Concepcion*. Compare pages 3-4, *supra*, with *Concepcion*, 131 S. Ct. at 1744 & n.3. There, the Supreme Court reversed a Ninth Circuit decision deeming a materially equivalent version of AT&T Mobility's arbitration provision to be unconscionable under California law because the provision bars class proceedings. *See Concepcion*, 131 S. Ct. at 1753. In doing so, the Court emphasized the fairness of the arbitration agreement, observing that "aggrieved customers who filed claims would be 'essentially guarantee[d]' to be made whole," and that AT&T customers were "*better off* under their arbitration agreement with AT&T than they would have been as participants in a class action." *Id.*

In light of *Concepcion*, courts around the country have confirmed that the FAA requires enforcement of AT&T Mobility's arbitration provision, including in disputes involving affiliates of and entities related to AT&T Mobility. *See, e.g., Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 (9th Cir. 2012); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1212-16 (11th Cir. 2011).[5]

---

[5]     *See also*, *e.g.*, *Laster v. T-Mobile USA, Inc.*, 2013 WL 4082682, at *1-*3 (S.D. Cal. July 19, 2013) (AT&T Mobility); *O'Conner v. AT&T Corp.*, 2013 WL 3107496, at *2-*3 (M.D. La. June 18, 2013) (AT&T Corp.); *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1003-04 (N.D. Ill. 2012) (AT&T Corp. and AT&T Illinois); *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1093-97 (N.D. Cal. 2012) (AT&T Mobility); *Blau v. AT&T Mobility*, 2012 WL 10546, at *5 (N.D. Cal. Jan. 3, 2012) (AT&T Mobility and AT&T Inc.); *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1174-75 (N.D. Cal. 2011) (AT&T Mobility); *Hendricks v. AT&T Mobility, LLC*, 823 F. Supp. 2d 1015, 1019-23 (N.D. Cal. 2011) (same); *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1046-51 (N.D. Cal. 2011) (same); *Nelson v. AT&T*

Indeed, the Supreme Court and courts around the country have enforced arbitration agreements that do not contain all of the pro-consumer features of the AT&T Mobility provision.[6]

In her response to AT&T's pre-motion letter, Dr. Wexler "denies" that she "'accepted AT&T Mobility's service agreement.'" Wexler Letter at 1. But that bare denial cannot serve to contradict AT&T's evidence that, to complete her transaction, Dr. Wexler was required to acknowledge acceptance of the terms of the AT&T Mobility Wireless Service Agreement; that AT&T Mobility's records confirm that Dr. Wexler or her authorized representative in fact acknowledged accepting those terms; and that she subsequently received notice of AT&T's revised arbitration provision. *See* pages 1-3, *supra*. That showing is more than enough to satisfy AT&T's "initial burden of showing that an agreement to arbitrate exists." *Carvant Fin. LLC v.*

---

*Mobility LLC*, 2011 WL 3651153, at *2-4 (N.D. Cal. Aug. 18, 2011) (same); *Boyer v. AT&T Mobility Servs., LLC*, 2011 WL 3047666, at *3 (S.D. Cal. July 25, 2011) (AT&T Mobility Services LLC); *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 2011 WL 2886407, at *3-4 (N.D. Cal. July 19, 2011) (AT&T Mobility); *cf. Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256-67 (10th Cir. 2012) (enforcing materially identical arbitration provision in AT&T residential Internet service contract against various AT&T entities), *aff'g* 804 F. Supp. 2d 1196, 1205 (W.D. Okla. 2011); *Sherman v. AT&T Inc.*, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012) (enforcing materially identical arbitration provision in AT&T residential Internet service contract against various AT&T entities).

[6]  *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2311-12 (2013); *Adams v. AT&T Mobility, LLC*, 816 F. Supp. 2d 1077, 1088 (W.D. Wash. 2011) ("The court * * * observes that the decision in *Concepcion* did not depend on the relatively consumer-friendly terms of the ATTM arbitration agreement."), *aff'd*, 524 F. App'x 322 (9th Cir. 2013); *Coppock v. Citigroup, Inc.*, 2013 WL 1192632, at *7 (W.D. Wash. Mar. 22, 2013) (describing the "mistaken belief that *Concepcion* established some sort of consumer-friendliness floor to arbitration agreements, below which the consumer cannot, as a matter of law, vindicate her statutory rights"); *Vernon v. Qwest Commcn's Int'l, Inc.*, 925 F. Supp. 2d 1185, 1195 (D. Colo. 2013) (rejecting plaintiffs' argument that an arbitration agreement was "substantively unconscionable" because it did not have the "consumer-friendly" terms addressed in *Concepcion*); *Hodsdon v. DirecTV, LLC*, 2012 WL 5464615, at *7 (N.D. Cal. Nov. 8, 2012) (noting the "faulty premise[] that the *Concepcion* ruling was dependent on the consumer-friendly aspects of the provision at issue in that case"); *Guerrero v. Equifax Credit Info. Servs., Inc.*, 2012 WL 7683512, at *6 (C.D. Cal. Feb. 24, 2012) ("Although not as consumer friendly as the arbitration provision addressed in *Concepcion*, the clause at issue here is not substantively unconscionable.").

*Autoguard Advantage Corp.*, 958 F. Supp. 2d 390, 395 (E.D.N.Y. 2013).  And Dr. Wexler's letter does not contradict that showing, for it is "not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends."  *Oppenheimer & Co. v. Neidhardt,* 56 F.3d 352, 358 (2d Cir. 1995).

### B. Dr. Wexler's Claim Is Within The Scope Of Her Arbitration Agreement.

Dr. Wexler's dispute with AT&T falls well within the scope of her arbitration agreement. To begin with, the plain language of the agreement requires arbitration of "**all disputes and claims** between us."  White Decl. Ex. 2 § 1.  Dr. Wexler argues that AT&T Corp. is a "non-signatory" that cannot invoke the arbitration agreement.  Wexler Letter at 2.  But in the cases she relies upon, the parties seeking to arbitrate were "not mentioned in the arbitration agreement[s]" in any way.  *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 127 (2d Cir. 2010); *see also Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008).  Here, by contrast, AT&T Corp. *is* "linked textually" (*Ragone*, 595 F.3d at 127 (internal quotation marks omitted)) to the claims and the AT&T Mobility Wireless Service Agreement:  The agreement defines the term "us" to include not only AT&T Mobility, but also its "affiliates."  White Decl. Ex. 2 § 1. And AT&T is an affiliate of AT&T Mobility because the two share common ownership; both are wholly-owned subsidiaries of AT&T Inc.  *See* Decl. of Jackie Begue ¶ 5.[7]

In addition, the agreement provides for arbitration of "all disputes and claims," and "includes, but is not limited to * * * claims arising out of or relating to any aspect of the relationship between us," including those claims "based in * * * statute."  White Decl. Ex. 1 § 1

---

[7]     Black's Law Dictionary defines an "affiliate" as "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation."  BLACK'S LAW DICTIONARY 67 (9th ed. 2009); *see also*, *e.g.*, *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("The plain and ordinary meaning of 'affiliate'" in a contract is "'a company * * * associated with others under common ownership or control.'") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 35 (2002)).

(emphasis omitted).  The Second Circuit has explained that a narrower clause—one that covered claims "'arising out of or relating to'" the underlying contract containing the arbitration agreement—would be "the paradigm of a broad clause."  *Collins & Aikman Prods. Co. v. Bld. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995).  Dr. Wexler's agreement with AT&T Mobility is even broader than that paradigmatically broad clause, and extends the scope to include "all disputes and claims between us"—without any limitation.

Dr. Wexler contends that her claim does not fall within the scope of her arbitration agreement because it is akin to "a case where a pedestrian who happens to be a customer of AT&T Mobility, LLC, is hit by a van owned by AT&T Corp."  Wexler Letter at 1.  But her analogy is entirely inapt. This case involves allegations that a phone call was placed by one AT&T entity to Dr. Wexler on the phone line on which she receives service from AT&T Mobility.  *See* Am. Compl. ¶ 14; Begue Decl. ¶ 5.  The claim that AT&T Mobility's affiliate (AT&T Corp.) violated a statute by calling Dr. Wexler's AT&T Mobility number is a "dispute between" Dr. Wexler and "us" (defined as AT&T Mobility and its "affiliates"); moreover, the dispute plainly "relat[es] to * * * the relationship between" Dr. Wexler and "us" (AT&T Mobility and affiliated AT&T entities).

Dr. Wexler also contends that her claim is not arbitrable because "the contract expired" and "she is not under a contract for her cell phone."  Wexler Letter at 1.  Even if she were correct that her service agreement has "expired," that would make no difference:  Her arbitration agreement expressly states that it survives the termination of the agreement:  "This Agreement * * * includes, but is not limited to: * * * claims that may arise after the termination of this Agreement."  White Decl. Ex. 1 § 1.  Courts enforce arbitration clauses that cover claims "arising * * * after termination of the contract."  *Bank of Am., N.A. v. Diamond State Ins. Co.*,

9

2002 WL 31720328, at *3 (S.D.N.Y. Dec. 4, 2002) (noting that the "arbitration clause" at issue "specifically states that differences arising between [parties] after termination of the contract shall be submitted to arbitration").   Indeed, "an arbitration clause survives termination of a contract unless the contract *expressly provides otherwise*."   *Lee v. Deng*, — F. Supp. 3d —, 2014 WL 6617294, at *2 (N.D. Ohio Nov. 21, 2014) (emphasis added); *see also Abbott Labs. v. Qiagen Gaithersburg, Inc.*, 2010 WL 1539952, at *2 (N.D. Ill. Apr. 15, 2010) ("In any event, arbitration provisions survive the termination or expiration of the agreement in which they are found unless the agreement expressly provides otherwise."); *Medscript PBM, Inc. v. Procare PBM, Inc.*, 2008 WL 4941002, at *5 (E.D. Mo. Nov. 17, 2008) ("Under the federal common law of arbitration, there is a general presumption that an arbitration provision in a contract survives termination of the contract.").

Moreover, while Dr. Wexler contends that her contract has "expired" (Wexler Letter at 1), AT&T Mobility's records reflect that she continues to receive wireless service from AT&T Mobility on a month-to-month basis for the phone line that is the subject of her complaint. Plourde Decl. ¶ 10.  All that has "expired" is her commitment to keep her service for a fixed term.  *Id.* ¶ 9.  The Wireless Service Agreement under which she receives service remains in force.

Finally, even if there were any uncertainty as to whether Dr. Wexler's claim is arbitrable—and there is none—the Supreme Court has made clear that, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also*, *e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (same); *AT&T Techs., Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 650 (1986) ("[A]n order to arbitrate the

particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (internal quotation marks omitted). And the arbitration agreement itself declares that "[t]his agreement to arbitrate is intended to be broadly interpreted." *E.g.*, White Decl. Ex. 1 § 1. For that reason, at least one court has described the arbitration agreement as "all-encompassing." *Makarowski v. AT&T Mobility, LLC*, 2009 WL 1765661, at *3 (C.D. Cal. 2009).

## CONCLUSION

The Court should compel arbitration of plaintiff's claims against AT&T and stay further litigation of those claims pending the resolution of that arbitration.

Dated: April 13, 2015

       /s/ Archis A. Parasharami
       Archis A. Parasharami
       Mayer Brown LLP
       1999 K Street, N.W.
       Washington DC, 20006-1001
       Tel: (202) 263-3000
       Fax: (202) 263-3300
       aparasharami@mayerbrown.com

       Christopher J. Houpt
       Mayer Brown LLP
       1221 Avenue of the Americas
       New York, NY 10020
       Tel: (212) 506-2380
       Fax: (212) 849-5830
       choupt@mayerbrown.com

       Counsel for Defendant
       AT&T Corp.