**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------
EVE WEXLER, on behalf of herself and all others
similarly situated,

                       Plaintiff,

             v.

                                            15-CV-0686 (FB/VVP)

AT&T CORP.

                       Defendant.
-----------------------------------------------------------------

## PLAINTIFF EVE WEXLER'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................................ 2

    a.  Procedural Background ........................................................................................ 2

    b.  Parties .................................................................................................................... 2

    c.  Third Party ............................................................................................................ 3

III.  ARGUMENT ................................................................................................................. 3

    a.  Defendant AT&T Corp.'s Motion to Compel Arbitration Should Be Denied Because
        Defendant Fails To Show Plaintiff Agreed to Arbitrate Her TCPA Claim. .................... 3

    b.  Defendant AT&T Corp. Fails to Show An Enforceable Arbitration Agreement Exists
        Between It and Dr. Wexler. ........................................................................................... 5

        i.  No Arbitration Agreement Exists Between Dr. Wexler and Defendant AT&T Corp.
            ....................................................................................................................... 5

        ii.  Defendant AT&T Corp.'s Argument Relies on a Nonexistent Third Party
            Arbitration Agreement and Account Records Which Are Inadmissible Hearsay. .... 6

        iii.  Checking a Box is Not Sufficient to Create An Arbitration Agreement ................ 13

    c.  Plaintiff Is Not Required to Submit Her Dispute with AT&T Corp. to Arbitration
        Pursuant to a Purported Agreement Between Herself and a Third Party ..................... 14

    d.  Defendant's Automated or Prerecorded Calls Made After Dr. Wexler Terminated Her
        Contract with Mobility Did Not "Arise out of" or "Relate to" that Agreement, and Are
        Thus Beyond the Scope of Its Arbitration Clause. ....................................................... 19

    e.  Dr. Wexler's TCPA Claim Neither Relies on the Third Party Mobility Agreement nor
        Involves an Alleged Breach of Duties Created by That Agreement. ........................... 20

IV.  CONCLUSION ............................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.*,
   206 A.D.2d 166, 619 N.Y.S.2d 260 (1 Dept. 1994)............................................................ 4, 5

*AT & T Techn, Inc. v. Commmuns. Workers of Am.*,
   475 U.S. 643 (1986) ....................................................................................... 4

*Bank of Am., N.A. v. Diamond State Ins. Co.*,
   2002 U.S. Dist. LEXIS 23225 (S.D.N.Y. Dec. 3, 2002)........................................ 19

*Bassett v. Electronic Arts, Inc.*, No. 13-cv-4208 (MKB),
   2015 U.S. Dist. LEXIS 35895 (E.D.N.Y. March 13, 2015).................................... 24

*Blau v. AT&T Mobility*,
   2012 WL 10546 (N.D. Cal. Jan. 3, 2012) ......................................................... 18

*Boyer v. AT&T Mobility Servs.*,
   2011 U.S. Dist. LEXIS 80607 (S.D. Cal. July 25, 2011)....................................... 17

*CACH LLC v. Askew*,
   358 S.W.3d 58, 63-64 (Mo. 2012) ................................................................... 7

*Cape Flattery Ltd. v. Titan Mar., LLC*,
   647 F.3d 914 (9th Cir. 2011)........................................................................... 18

*Carey v. 24 Hour Fitness, USA, Inc.*,
   669 F.3d 202 (5th Cir. 2012)........................................................................... 25

*Clay v. New Mexico Title Loans, Inc.*,
   288 P.3d 888 (N.M. App. 2012)....................................................................... 20

*Coneff v. AT&T Corp.*,
   673 F.3d 1155 (9th Cir. 2012)......................................................................... 17

*Coors Brewing Co. v. Molson Breweries*,
   51 F.3d 1511 (10th Cir. 1995).......................................................................... 19

*Cruz v. Cingular Wireless, LLC*,
   648 F.3d 1205 (11th Cir. 2011)........................................................................ 17

*Delaney v. Bank of Am. Corp.*,
   908 F. Supp. 2d 498, 507 n.7 (S.D.N.Y. 2012).................................................. 7, 11

*Douglas v. Johnson Real Estate Investors, LLC*,
  470 F. App'x 823 (11th Cir. 2012) ................................................. 25

*Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*,
  41 F.3d 243 (5th Cir. 1998) ........................................................ 20

*Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*,
  349 Fed. App'x 551 (2d Cir. 2009) ....................................... 4, 5, 12

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................... 5

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
  561 U.S. 287 (2010) ................................................................... 3

*Green Tree Servicing, L.L.C. v. Fisher*,
  166 P.3d 944 (Okla. Civ. App. 2007) ........................................ 22

*Hallmark v. Cohen & Slamowitz, LLP*,
  No 11 Civ 842S, 2013 WL 5178128 (W.D.N.Y. Sept. 16, 2013) ........... 12

*Hancock v. Am. Tel. & Tel. Co.*,
  701 F.3d 1248 (10th Cir. 2012) .................................................. 18

*Hanssel v. P. Tomasetti Contracting Corporation, Sup.*,
  8 N.Y.S.2d 873 *aff'd* 257 App.Div. 1031 N.Y.S.2d 565 ..................... 5

*Hendricks v. AT&T Mobility, LLC*,
  823 F. Supp. 2d 1015 (N.D. Cal. 2011) ...................................... 17

*Hines v. Overstock.com, Inc.*,
  380 F. App'x 22 (2d Cir. 2010) ......................................... 4, 11, 24

*Holzer v. Mondadori*,
  2013 U.S. Dist. LEXIS 37168 (S.D.N.Y. Mar. 14, 2013) .................... 15

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ..................................................................... 4

*In re Apple & AT&TM Antitrust Litig.*,
  826 F. Supp. 2d 1168 (N.D. Cal. 2011) ...................................... 17

*In re Apple iPhone 3G Prods. Liab. Litig.*,
  859 F. Supp. 2d 1084 (N.D. Cal. 2012) ...................................... 17

*In re Apple*,
  2011 U.S. Dist. LEXIS 78276 (N.D. Cal. July 19, 2011) .................... 17

*Irelyn re Jiffy Lube Int'l, Inc.*,

2012 U.S. Dist. LEXIS 31926 (S.D. Cal. Mar. 8, 2012) .......................................................... 20

*JLM Indus., Inc. v. Stolt-Nielson SA*,
    387 F.3d 163 (2d Cir. 2004) ............................................................................................ 16

*Joseph v. TrueBlue, Inc.*,
    2015 U.S. Dist. LEXIS 17403 (W.D. Wash. Feb. 11, 2015) .................................................. 20

*Kaltwasser v. AT&T Mobility LLC*,
    812 F. Supp. 2d 1042 (N.D. Cal. 2011) .............................................................................. 17

*Klauber Bros., Inc. v. Westchester Lace, Inc.*,
    1989 U.S. Dist. LEXIS 3169 (S.D.N.Y. Mar. 30, 1989) ........................................................ 24

*Knutson v. Sirius XM Radio Inc.*,
    771 F.3d 559 (9th Cir. Cal. 2014) ................................................................................ 13, 14

*Laster v. T-Mobile USA, Inc.*,
    2013 WL 4082682 (S.D. Cal. July 19, 2013) ...................................................................... 18

*Laumann, et al. v. NHL, et al.*,
    989 F. Supp. 2d 329 (S.D.N.Y. 2013) ......................................................................... 16, 19, 22

*Lebowitz v. Dow Jones & Co.*,
    508 Fed. Appx. 83 (2d Cir. 213) ....................................................................................... 25

*Martin v. Worldspan L.P.*,
    1996 WL 822319 (W.D. Mo. 1996) .................................................................................... 7

*McGreal v. AT&T Corp.*,
    892 F. Supp. 2d 996 (N.D. Ill. 2012) ............................................................................ 3, 17

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................... 4

*Nelson v. AT&T Mobility LLC*,
    2011 WL 3651153 (N.D. Cal. Aug. 18, 2011) ..................................................................... 17

*O'Conner v. AT&T Corp.*,
    2013 WL 3107496 (M.D. La. June 18, 2013) ...................................................................... 17

*Opals on Ice Lingerie v. Body Lines Inc.*,
    320 F.3d 362 (2d Cir. 2003) ....................................................................................... 4, 12

*Phoenix Assocs. III v. Stone*,
    60 F.3d 95, 101 (2d Cir. 1995) ................................................................................ 7, 8, 11

*Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*,
    38 F.3d 627 (2d Cir. 1994) ............................................................................................. 11

iv

*Ragone v. Atl. Video at Manhattan Ctr.*,
   No. 07 Civ. 6084 (JGK), 2008 WL 4058480 (S.D.N.Y. Aug. 29, 2008) ......................... 14, 18

*Ragone v. Atl. Video at Manhattan Ctr.*,
   595 F.3d 115 (2d Cir. 2010) ..................................................................................... 14

*Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*,
   157 F.3d 775 (10th Cir. 1998) .................................................................................. 22

*Roling v. E\*Trade Sec, LLC*,
   756 F. Supp. 2d 1179 (N.D. Cal. 2010) .................................................................... 25

*Ross v. Am. Express Co.*,
   547 F.3d 137 (2d Cir. 2008) ................................................................................. 4, 18

*Sadowski v. Dell Computer Corp.*,
   268 F. Supp. 2d 129 (D. Conn. 2003) ....................................................................... 24

*Schnabel v. Trilegiant*,
   697 F.3d 110 (2d Cir. 2012) ................................................................................ 11, 14

*Seifert v. U.S. Home Corp.*,
   750 So.2d 633 (Fla. 1999) ........................................................................................ 21

*Sherman v. At&T Inc.*,
   2012 U.S. Dist. LEXIS 40394 (N.D. Ill. Mar. 26, 2012) ........................................... 17

*Sherrod v. Time Warner Cable, Inc.*,
   2014 U.S. Dist. LEXIS 163393 (S.D.N.Y. Nov. 21, 2014) ........................................ 19

*Smith v. Steinkamp*,
   318 F.3d 775 (7th Cir. 2003) ............................................................................... 19, 23

*Smith/Enron Cogeneration v. Smith Cogeneration*,
   198 F.3d 88, 97-98 (2d Cir. 1999) ........................................................................... 15

*Sokol Holdings, Inc. v. BMB Munai, Inc.*,
   542 F.3d 354, 359 (2d Cir. 2008) ........................................................................ 14, 15

*Torres v. Major Auto. Group*,
   2014 U.S. Dist. LEXIS 136292, \*22 (E.D.N.Y. Sept. 24, 2014) .................................. 9

*Webb v. Midland Credit Mgmt.*,
   2012 U.S. Dist. LEXIS 80006 (N.D. Ill. May 31, 2012) ............................................. 8

**Statutes and Rules**

Federal Rule of Evidence 803(6) ............................................................... 6, 7, 8

47 U.S.C. §227 et seq....................................................................................... 2

**Treatises**

Restatement (Second) of Contracts (1981) ...................................................... 26

## I.      INTRODUCTION

Defendant AT&T Corp.'s motion to compel arbitration should be denied because (1) AT&T Corp. is not entitled to enforce the arbitration agreement because AT&T Corp. is not a party to Plaintiff's service agreement with another company; (2) AT&T Corp. is trying to force Plaintiff to arbitrate her TCPA claim based on an agreement that was intended to apply only to Plaintiff's status as a customer of a different company; (3) AT&T Corp. is trying to enforce arbitration for claims arising after the cancellation of the contract which incorporated the purported arbitration agreement; and (4) even if AT&T Corp. could enforce a prior third-party arbitration agreement unrelated to Plaintiff's claim in this matter, AT&T Corp. has failed to support its claim with admissible evidence.

The only agreement to arbitrate which Defendant AT&T Corp. produced is that supposedly related to an agreement between Dr. Wexler and a third party ("Mobility Agreement"). Yet, even this agreement, and its revised arbitration clause, do not contain Dr. Wexler's signature. Indeed, the documents Defendant produces are inadmissible hearsay because Defendant has failed to provide sufficient foundation testimony to overcome this evidentiary bar.

In any event, the Mobility Agreement and Notice of Revised Arbitration Clause do not give AT&T Corp. the right to compel Plaintiff to arbitrate anything. AT&T Corp. is not a party to the Mobility Agreement or Notice, AT&T Corp. did not sign the Agreement, and Plaintiff's TCPA claim is not intertwined factually with and does not arise out of that Agreement. Thus, Defendant's attempt to enforce an arbitration agreement as a non-signatory, its alternative equitable estoppel theory, must fail.

In addition, Plaintiff's claim against Defendant AT&T Corp. is separate and distinct from the Mobility Agreement. Just because the arbitration clause in Mobility's Agreement may have

in the past been construed to be broad does not mean its reach is limitless, and Plaintiff's TCPA claims fall outside of its limits.

Accordingly, as explained in more detail below, the court should deny Defendant's motion to compel arbitration.

## II.    STATEMENT OF FACTS

### a.  Procedural Background

Plaintiff Eve Wexler, on behalf of herself and a proposed class of similarly situated individuals, brought suit against Defendant AT&T Corp. for sending unwanted telephone calls and text messages using an artificial or prerecorded voice and/or equipment with the capacity to dial numbers without human intervention. Dtk. 4 ("Amended Complaint") ¶¶3, 14, 27; 27 U.S.C. 227 et seq. (TCPA). Plaintiff seeks certification of the proposed class, and statutory damages and an injunction prohibiting Defendant from making further calls in violation of the TCPA, for herself and on behalf of the putative class. *Id*. ¶42. Plaintiff was not a customer of AT&T Corp., did not provide AT&T Corp. consent to call her cellular telephone and never had any contract with AT&T Corp. Declaration of Eve Wexler ("Wexler Decl.") ¶¶3, 5, 8.

### b.  Parties

According to the messages left on Plaintiff Dr. Eve Wexler's telephone, AT&T Corp. provides users with U-verse television service. *See* Dkt. 4, ¶¶ 21-25; Wexler Decl. ¶¶10-11. Dr. Wexler has never had an account with AT&T Corp. for U-Verse television. Wexler Decl. ¶4. Dr. Wexler has also never signed an agreement to arbitrate any claims or disputes to which AT&T Corp. was a signatory party. *Id*. ¶6. Nonetheless, Defendant AT&T repeatedly called and text messaged Plaintiff regarding a U-Verse television account with AT&T Corp. that was not hers. *Id*. at ¶¶14-17, 21-22. The content of the calls and messages did not relate to a telephone account

2

or any account that Plaintiff had. Dkt. 4 ¶¶14-17, 21-22. Even after filing the present suit, AT&T Corp. has continued to contact Dr. Wexler about a repair. Wexler Decl. ¶14.

### c.  Third Party

AT&T Mobility, LLC ("Mobility") is a separate legal entity from the Defendant, AT&T Corp. Declaration of Jackie Begue ("Begue Decl.") attached to Def.'s Mot to Compel, ¶5. Defendant has alleged Wexler had wireless service on her iPhone through Mobility[1] during the relevant time period. During her relationship with Mobility, Dr. Wexler was enrolled in Mobility's autopay option, in which the amount of her Mobility bill was debited from her linked account each month without any action on her part aside from the initial set-up. Wexler Decl. ¶16. As Defendant concedes, Wexler is not currently under contract with Mobility for her cell phone and was not under contract during the time period in which AT&T Corp. made the calls and texts at issue.[2] *See Id*. at ¶17. Furthermore, Dr. Wexler denies that "on October 29, 2008, [she] accepted AT&T Mobility's service agreement." *Id*. at ¶18.

## III.   ARGUMENT

### a.  Defendant AT&T Corp.'s Motion to Compel Arbitration Should Be Denied Because Defendant Fails To Show Plaintiff Agreed to Arbitrate Her TCPA Claim.

The Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010). Although Defendant is correct that the Court has recognized "a liberal

---

[1] The fact that AT&T Mobility provides wireless telephone services has been established in a variety of lawsuits brought against Mobility, to which Defendant cites. *See e.g., McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1003 (N.D. Ill. 2012) ("AT&T [Corp.] contends that McGreal's claims against them involve her AT&T cellular telecommunications service, which was provided by another AT&T affiliate, AT&T Mobility.")

[2] Plourde Dec. ¶9, attached to Def.'s Mot. to Compel ("[B]eginning on September 15, 2014, Dr. Wexler no longer received ATTM service under a fixed-term service commitment, and began to receive service under a month-to-month service commitment…")

federal policy favoring arbitration agreements," *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), there is an exception to this policy for questions of arbitrability. In other words, whether a particular dispute is subject to arbitration in the first place is "for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techn, Inc. v. Commmuns. Workers of Am.*, 475 U.S. 643, 649 (1986). These gateway questions for judicial determination include both "whether the parties are bound by a given arbitration clause" and "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002).

It is fundamental that arbitration "is a matter of consent, not coercion." *Ross v. Am. Express Co*., 547 F.3d 137, 143 (2d Cir. 2008) (quotation marks omitted) (reversing grant of motion to compel arbitration). The law thus "requires that parties actually agree to arbitration before it will order them to arbitrate a dispute." *Opals on Ice Lingerie v. Body Lines Inc*., 320 F.3d 362, 369 (2d Cir. 2003). As the party seeking to compel arbitration, Defendant "bears the burden to establish that a binding agreement was made and to prove the terms" of that agreement. *Dreyfuss v. eTelecare Global Solutions-U.S. Inc*., 349 Fed. App'x 551, 555 (2d Cir. 2009) citing *Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.,* 206 A.D.2d 166, 619 N.Y.S.2d 260, 263 (1 Dept. 1994) ("The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract.")

Where the moving party fails to "make a prima facie initial showing that an agreement to arbitrate existed," a motion to compel arbitration must be denied. *Hines v. Overstock.com, Inc*., 380 F. App'x 22, 24 (2d Cir. 2010).

In evaluating whether an arbitration clause binds particular parties, courts look to ordinary state law principles governing formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). Just as in any other context, New York law requires the party seeking to enforce a contractual provision, including an arbitration agreement, "'to establish that a binding agreement was made and to prove the terms of the contract.'" *Dreyfuss II,* 349 Fed. App'x at 555 (quoting *Allied Sheet Metal*, 619 N.Y.S.2d at 263).

### b. Defendant AT&T Corp. Fails to Show An Enforceable Arbitration Agreement Exists Between It and Dr. Wexler.

Realizing it has no agreement with Dr. Wexler, Defendant AT&T Corp. contends that this Court should compel Dr. Wexler to arbitrate her claims, and eliminate her right to litigate on behalf of similar victims, on the basis of a supposed agreement to arbitrate and waive class action rights that Defendant is not a party to and that Defendant does not support with admissible evidence. For these reasons alone, this Court should deny the instant motion. *See Hanssel v. P. Tomasetti Contracting Corporation, Sup.*, 8 N.Y.S.2d 873, 882, *aff'd* 257 App.Div. 1031, 13 N.Y.S.2d 565, reversed on other grounds 283 N.Y. 164, 27 N.E.2d 977 ("The general rule… is that privity between a plaintiff and defendant is necessary to the maintenance of an action on the contract.")

### i. <u>No Arbitration Agreement Exists Between Dr. Wexler and Defendant AT&T Corp.</u>

Through its motion, Defendant AT&T Corp. attempts to enforce a supposed arbitration agreement that it asserts was incorporated into the Mobility Agreement with third party AT&T Mobility. Defendant AT&T Corp. does not dispute that it is not a signatory party to the Mobility Agreement. Accordingly, Defendant does not, and cannot, deny that no arbitration agreement exists to which both Plaintiff and Defendant are signatories. In fact, AT&T continues to solicit Dr. Wexler through mailings asking her to *become* a customer of AT&T Corp. Therefore, AT&T

5

Corp. is a non-signatory and cannot enforce the arbitration agreement without relying on it is alternative estoppel theory which, as discussed in further detail below, must fail.

ii. **Defendant AT&T Corp.'s Argument Relies on a Nonexistent Third Party Arbitration Agreement and Account Records Which Are Inadmissible Hearsay.**

Defendant admits it relies upon the Mobility Agreement, to which it is not a signatory. Yet, *Defendant has produced no "Mobility Agreement."* In an attempt to side step the fact that it failed to produce the agreement that it contends controls, AT&T Corp. relies on the Declarations of Plourde, Bates, and White and the exhibits attached thereto. However, none of these declarations even attest that Plaintiff was sent any arbitration clause. Instead, these declarations play a shell game with what was and what was not sent to cover up the gaping hole in Defendant's motion, which is that it is unable to satisfy its burden that Plaintiff entered into an arbitration agreement, let alone that this Defendant is entitled to enforce it. Put simply, Defendant AT&T Corp. does not have a copy of any Mobility Agreement and should not be allowed to rely on inadmissible evidence or have this Court overlook the gaps in its evidence. Along these lines, the exhibits to the declarations do not show that Dr. Wexler entered into an agreement to arbitrate her claims with Mobility, let alone with Defendant AT&T Corp. Instead, they are just samples of what *might* have been sent and none of these samples includes the Mobility Agreement.

Federal Rule of Evidence 602 requires that a witness's testimony be based on personal knowledge. Yet, none of the testimony regarding the actual arbitration agreement are made on personal knowledge. As such, in order for Defendant to use these records for the truth of the matter they assert, Defendant must show that all the requirements of the business records exception are met. Fed. R. Evid. 803(6). Records of regularly conducted activity are only exempted from the hearsay prohibition if Defendant AT&T Corp. can establish that the record

was (1) made at or near the time (2) by or from information transmitted by someone with knowledge (3) kept in the course of a regularly conducted activity of the a business (4) making the record was a regular practice of that activity (5) all conditions shown by testimony of custodian or other qualified witness. *Id*.

Defendant does not present a competent witness to support that any of its proffered documents 1) were made at or near the time 2) by someone with knowledge, and 3) making the record was a regular practice of that activity. *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 101 (2d Cir. 1995) ("[T]he proffered record must be supported by a proper foundation, namely, that … it was the 'regular practice of that business activity to make the [record].'" (citation omitted)); *Delaney v. Bank of Am. Corp.*, 908 F. Supp. 2d 498, 507 n.7 (S.D.N.Y. 2012) ("It is no response to posit that BoA may have a regular practice of maintaining [the records] (although Delaney has not even adduced evidence of this point). There is no suggestion that BoA (or Delaney) has a 'regular practice' of making such records.") In this case, none of these three declarations even mention regular business practice let alone describe what any such practice was.

### Declaration of Bates, Exhibits 1 (Acknowledgement Box) and 2 (Wireless Service Agreement)

Defendant has not argued, let alone established, that either the Acknowledgement Box that Plaintiff allegedly checked or the Wireless Service Agreement that Plaintiff allegedly entered into was made at or near the time it was created. Rather, David Bates in his declaration at Paragraph 4[3] states "the appearance of [the acknowledgement check box] is the same as or substantially similar to how the Premier web site would have appeared to a customer in October 2008." However, Mr. Bates is not an employee of either AT&T Mobility or AT&T Corp, but

---

[3] Plaintiff treats the first and second paragraph 4 of the Bates Declaration as paragraphs 4 and 5, respectively.

instead an employee of AT&T Inc[4]. Further he does not even establish that he was employed in his position in 2008 when he contends the box would have been checked, nor does he establish how else he would have knowledge of what would have appeared in 2008, nor that he is over eighteen and competent to testify, nor does he establish how and where any of these records were kept if one were to assume he was relying on reviewing records as opposed to going off memory.

The gap in Mr. Bates testimony is even more apparent when focusing on his bald assertion that "According to AT&T records, attached as Exhibit 2 is a true and correct copy of the text of the Wireless Service Agreement that would have been displayed to an individually responsible user who purchased a phone in October 2008 using AT&T's Premier website." Clearly he is not attempting to testify to personal knowledge. Yet the business records exception is unavailable because he does not attest to what records he was referring to, when they were created or how they were maintained or that they were maintained in the regular course.

As the moving party, it's Defendant's obligation to establish admissible evidence. Because the declaration fails to establish it was made on personal knowledge and/or fails to establish how the records were kept or created, it is inadmissible under *Phoenix Assocs. III*; *see also Webb v. Midland Credit Mgmt.*, 2012 U.S. Dist. LEXIS 80006, *8-18 (N.D. Ill. May 31, 2012)(denying motion to compel arbitration because defendant failed to produce business records kept in the ordinary course of business through a qualified custodian of those records).

Moreover, the source of this information clearly lacks trustworthiness. *See* Fed. R. Evid. 803(6)(E). Although Bates provides scant information, what he does provide is internally inconsistent. Bates claims that the appearance of Exhibit 1 is "the same or substantially similar"

---

[4]  *See Martin v. Worldspan L.P.*, 1996 WL 822319 (W.D. Mo. 1996); *see also CACH LLC v. Askew*, 358 S.W.3d 58, 63-64 (Mo. 2012), rehearing denied (March 6, 2012) (Although worked in credit industry for 20 years, affiant for debt collector was not qualified because he "could not specifically testify to the mode of the documents preparation or the time of their preparation" given that the documents were prepared by a separate company.)

to how the website would appear to a user in October 2008 (Bates Decl. ¶4), while at the same time claiming that Exhibit 2 is a "true and correct copy" of the text that would have appeared in October 2008. *Id*. at ¶5. Yet the differences are readily apparent. While the text in the box in Exhibit 1 begins with the phrase "Service Agreement," Bates declares, under penalty of perjury, that "a true and correct copy of the text of the Wireless Service Agreement that would have been displayed to a … user" begins:

> <%@ taglib uri="/dspTaglib" prefix="dsp" %>
> <dsp:page>
> <dsp:importbean

Bates Decl. ¶5; *Id*. at Ex. 2. This is unintelligible, internally inconsistent gibberish and clearly not what would have been displayed.

Thus, without the inadmissible exhibits, Bates' testimony fails to establish what terms a customer such as Plaintiff saw or agreed to when using the Mobility's Premier web site in October 2008. At most, Bates testifies that Exhibit 1 (screen shot of a box being checked) is "substantially similar" to what a customer would have seen at some unknown point in time prior to October 2009. Even assuming that he has personal knowledge to attest to this fact, all he has established is a box was checked.

### Declaration of White, Exhibit 1 (Notice of Revised Arbitration Clause)

Defendant proffers the testimony of Larry White, an employee of yet another AT&T entity, AT&T Services, Inc., to introduce the Notice of Revised Arbitration Clause. White Decl. Ex. 1. Defendant maintains this is the operative agreement. Yet, "two essential elements must be satisfied before a document will be deemed to have been incorporated by reference into another instrument or agreement. First, the agreement must specifically reference and sufficiently described the document to be incorporate, such that the latter 'may be identified beyond all reasonable doubt. Second, it must be clear that the parties to the agreement had knowledge of

9

and assented to the incorporated terms." *Torres v. Major Auto. Group*, 2014 U.S. Dist. LEXIS 136292, *22 (E.D.N.Y. Sept. 24, 2014) (citations and quotations omitted). With no admissible evidence as to the terms contained in an original Agreement between Dr. Wexler and Mobility, Defendant fails to explain the legal significance of this exhibit. Its relevance is supported only by its reference or incorporation in an original agreement between Dr. Wexler and Mobility, but this was not produced. Thus, Defendant must again rely on the Bates Declaration which as discussed above fails to provide foundation sufficient for admissibility.

Further, Mr. White never attested that this revised agreement was ever sent to Plaintiff. Instead, it appears that AT&T hopes the Court will just assume it was. One would think that if Mr. White was capable of attesting that the revised agreement was sent to Plaintiff, he would have directly said so. He did not. Yet, even assuming it was sent, the Notice of Revised Arbitration Clause is immaterial, as there is no evidence of any original agreement to incorporate the revised clause.

### Declaration of Plourde, Exhibits 1-7 (Various Account Notes, Summary and Statement)

Ms. Plourde's declaration does not fare any better. She also fails to explain how she has any personal knowledge and fails to explain how the records she attaches to her declaration were created or maintained. Further, the glaring omission in her declaration is the absence of the arbitration clause that Defendant is attempting to enforce. In other words, her declaration does not even try to attest that Plaintiff was sent an arbitration clause.

Specifically, Defendant's declarant fails to provide sufficient foundation testimony to cross the threshold of admissibility for any of the attached records. *See Exhibit 1* (2009 Computer-Generated Account Note); *Exhibit 2* (2008 Customer Service Summary); *Exhibits 3 and 4* (2008 Computer-Generated Account Notes); *Exhibits 5, 6,* and *7* (Billing Statements).

Plourde's declaration does contain a claim that she has knowledge that the attached records 1) were made at or near the time 2) by someone with knowledge, and 3) making the record was a regular practice of that activity. Accordingly, the hearsay records attached as Exhibits 1-7 to Plourde's declaration are inadmissible. *See Phoenix Assocs. III*, 60 F.3d at 101; *Delaney*, 908 F. Supp. 2d at 507 n.7.

Defendant may argue that computer-generated data is appropriate for treatment under 803(6), even if it is later printed out. While this may be true, it does not cure the initial untrustworthiness surrounding the original creation of these documents and failure to meet the requirements of Rule 803(6). *See Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.*, 38 F.3d 627, 632 (2d Cir. 1994) ("A business record may include data stored electronically on computers and later printed out for presentation in court, so long as the original computer data compilation was prepared pursuant to a business duty in accordance with regular business practice.")

Without this inadmissible hearsay, Defendant has offered *no evidence* even purporting to describe the manner in which Dr. Wexler supposedly was notified of, or agreed to, any arbitration provision even putting aside the fact that Plourde's declaration never attests to any purported arbitration agreement or any records of any such agreement. The Second Circuit has repeatedly held that parties cannot be bound to arbitrate absent an initial evidentiary showing by the movant of notification and knowing acceptance. Where a party seeking to compel arbitration fails to prove that a consumer was put on notice of an arbitration term and then manifested assent to it, the motion to compel must be denied. *Hines*, 380 F. App'x at 24; *see also Schnabel v. Trilegiant*, 697 F.3d 110, 118 (2d Cir. 2012) (affirming denial of motion to compel for failure to prove plaintiff received notice of arbitration provision)

11

The Second Circuit has squarely rejected motions to compel arbitration that were supported by much more specific evidence than Defendant has produced here, on the ground that the moving party failed to establish the existence and terms of supposed arbitration agreements. In *Opals*, although the moving party – unlike Defendant here – produced documents signed by each party containing an arbitration provision, the party seeking to enforce the arbitration could not prove that both parties signed the *same* document. 320 F.3d at 365-66. The version signed by one party called for arbitration in New York, the other for arbitration in California. *Id*. at 371-72. Despite each party having manifested an intent to arbitrate, the Court refused to mandate arbitration, because the difference in the contracts each signed were "significant" and the party seeking arbitration had not demonstrated a "meeting of the minds." *Id*. at 372; *see also Hallmark v. Cohen & Slamowitz, LLP*, No 11 Civ 842S, 2013 WL 5178128, at *4 (W.D.N.Y. Sept. 16, 2013) (rejecting debt collector's reliance on partial credit card agreement where "no indication" that the customer signed it.) Defendant cannot establish that Plaintiff entered into an agreement with Mobility, let alone the relevant terms and conditions for a purported arbitration agreement.

That Dr. Wexler does not deny she was a customer of Mobility does not change the Court's analysis under the Federal Rules of Evidence. In *Dreyfuss*, the party seeking arbitration claimed that the plaintiff signed an employment agreement mandating arbitration, and produced its first page (containing an arbitration clause) and signature page, but not the page(s) in between. *Dreyfuss II*, 349 F. App'x at 552. There the plaintiff did not deny entering into an agreement. *Id*. at 553. And, just as here, plaintiff argued that defendant could not compel based on terms in an agreement it did not produce. *Id.* at 553. Even though the defendant in *Dreyfuss*, was an original party to the agreement, and plaintiff did not deny being a party to an agreement, the Court held that the defendant had not established an "enforceable agreement" to arbitrate. *Id*.

at 553-54. Defendant's argument here is substantially weaker than those in *Opals* and *Dreyfuss*; it contends that the Court should deprive Dr. Wexler of her litigation rights because a sample Mobility customer agreement contained *some form* of arbitration clause without identifying an admissible, complete version of its terms and conditions, or evidence that Dr. Wexler was a party to the agreement, and without being a party to this agreement itself. Even if Defendant properly supported that Plaintiff entered into any customer agreement with Mobility – which it has not done – the argument that purported a revised agreement with indefinite parties now controls plainly fails under established law.

### iii.   <u>Checking a Box is Not Sufficient to Create An Arbitration Agreement</u>

Plaintiff argues in the alternative that even if Defendant could establish that checking the box incorporated the arbitration agreement it contends controls, there is no valid agreement. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. Cal. 2014). The court in *Knutson* reversed a grant of defendant's motion to compel plaintiff's TCPA claims and denying Defendant's shrink-wrap argument that buying a car incorporated an undisclosed arbitration agreement. By applying well-settled principles of contract law, the court concluded no valid agreement to arbitrate existed between the parties. As far as Knutson knew, he had only entered into a contractual relationship with Toyota, not Sirius. The court found that a reasonable person in Knutson's position could not be expected to understand that buying from Toyota would bind him to a contract with Sirius, "let alone that contained an arbitration provision without any notice of such terms." *Id*. The court rejected Sirius's shrink wrap agreement argument (i.e., where consumer purchases prior to getting the detailed terms of the contract), and applied an exception the general rule that a party cannot avoid the terms of a contract by failing to read before signing. An exception applied here because no evidence existed that Knutson purchased anything from Sirius, or knew he was entering into a contractual relationship with a satellite radio provider.

13

In determining that buying a car was not sufficient to incorporate an arbitration agreement, the court in *Knutson* examined the Second Circuit's holding in *Schnabel* and found the provision was unenforceable because the plaintiff did not have sufficient notice. *Id*. at 568. The *Knutson* court considered that in *Schnabel*, the Second Circuit held that the arbitration provision was unenforceable even though the plaintiffs were provided more notice, using click-wrap (i.e., users were required to take the affirmative action of clicked a "Yes" button to indicate they had read the terms and conditions). *Id*. at 569. However, in *Schnabel* the court considered a motion to compel brought by a party to the original agreement; in *Knutson* the court considered a motion to compel brought by a similar non-signatory defendant. Furthermore, in *Schnabel*, the Second Circuit found that an auto-debiting of plaintiff's credit cards, similar to the auto-debiting of Dr. Wexler's account here, was "too passive for any reasonable fact finder to conclude that they manifested a subjective understanding of the arbitration and other emailed provisions." *Id*.; *Schnabel*, 671, F.2d at 115. Accordingly, the box-checking that supposedly occurred is insufficient to bind Dr. Wexler and third-party Mobility.

### c. Plaintiff Is Not Required to Submit Her Dispute with AT&T Corp. to Arbitration Pursuant to a Purported Agreement Between Herself and a Third Party

Finding that no arbitration agreement exists should be the end of this Court's inquiry, however, Defendant's argument that it can enforce an arbitration agreement to which it is not a signatory, also fails. Signatories to an arbitration agreement can only be compelled to arbitrate their claims with a non-signatory after a careful review of the relationship among the parties, the contracts they signed and the issues that had arisen among them discloses that the issues the non-signatory is seeking to resolve an arbitration are intertwined with the agreement that the party has signed. *Ragone v. Atl. Video at Manhattan Ctr.*, No. 07 Civ. 6084 (JGK), 2008 WL 4058480, at *8 (S.D.N.Y. Aug. 29, 2008) (collecting cases applying this standard) aff'd, *Ragone*, 595 F.3d

14

115 (2d Cir. 2010). "This does not mean, however, 'that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate.'" *Ragone*, 595 F.3d at 127 (quoting *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008)). Rather, "[i]n addition to the 'intertwined' factual issues, there must be a relationship among the parties of a nature that justifies a conclusion that the party which agreed to arbitrate with another entity should be estopped from denying an obligation to arbitrate a similar dispute with the adversary which is not a party to the arbitration agreement." *Sokol*, 542 F.3d at 359.

AT&T Corp. does not, and cannot, deny that it is a party to any arbitration agreement with Plaintiff. While Defendant AT&T Corp. asserts that oblique reference in the so called revised agreement is determinative, as explained above any text-based incorporation theory fails without the original Agreement. Thus, Defendant must rely on its alternative equitable estoppel theory. *Smith/Enron Cogeneration v. Smith Cogeneration*, 198 F.3d 88, 97-98 (2d Cir. 1999), (noting  the five principles of contract law that can bind a signatory and non-signatory to arbitration agreements recognized by the Second Circuit). Yet, because the issues are not inextricably intertwined and the parties are not sufficiently related, Defendant's alternative equitable estoppel theory must fail.

That AT&T Corp. and Mobility are both subsidiaries of the same parent company is not determinative. AT&T Corp. does not own Mobility, is not its parent company, an officer shareholder, manager, employee, shareholder, or agent. *See* Begue Decl., ¶5. Nor does AT&T Corp. assert that Mobility is its parent, owner, or agent. *Id.*; *see Holzer v. Mondadori*, 2013 U.S. Dist. LEXIS 37168, *28-29 (S.D.N.Y. Mar. 14, 2013) (finding that non-signatory did not have a

sufficiently close relationship to compel arbitration of arbitrability because it was not an officer, director, member, manager, employee, shareholder, or agent of signatory, nor had it succeeded to or guaranteed the signatory's interest or conducted itself as if it were subject to the agreements).

Moreover, this Court does not merely consider the relationship between the defendants, but between the parties. Here, Plaintiff does not have the intermingled relationship that this Circuit has found to enable a non-signatory to compel arbitration. In *JLM Industries*, plaintiffs brought suit under the Sherman Act against defendants who were parties to an arbitration agreement for shipping services, and some defendants who were not. *JLM Indus., Inc. v. Stolt-Nielson SA*, 387 F.3d 163, 177 (2d Cir. 2004). The defendants were more closely related than Defendant and Mobility here. There, the non-signatory defendant was the parent of the signatory defendants. Moreover, the court found that plaintiffs were purchasing shipping services directly from the parent non-signatory defendants. *Id*. at 178. This intermingling is distinct from the total lack of any business relationship between Plaintiff and Defendant AT&T Corp., as Plaintiff has never entered into any agreement with AT&T Corp. Plaintiff did not engage in any transaction with AT&T Corp., did not receive statements from AT&T Corp., and until the unwanted telephone calls at issue, Plaintiff had never communicated with AT&T Corp. Wexler Decl. ¶5-7, 9.

In contrast, the facts of *Laumann v. NHL*, involving plaintiff's use of a signatory party's service to receive a non-sigantory's violative "service," are strikingly similar to the service providers in the present case. *Laumann, et al. v. NHL, et al.*, 989 F. Supp. 2d 329, 338 (S.D.N.Y. 2013) (denying Comcast's motion to compel arbitration). In *Laumann*, plaintiff Silver brought a putative class antitrust claim against the National Hockey League (NHL) and Major League Baseball (MLB), as well as Comcast and DIRECTV as distributors. *Id*, at 333. Silver's claims

16

arose out of a television package he purchased from DIRECTV, although he also received Comcast television and internet services. *Id*. at 337. This is similar to the present case where Plaintiff's claims arise out of a telephone call received through her telephone services purchased from Mobility. In *Laumann*, the court denied Comcast's motion to compel arbitration, finding that the sole nexus between plaintiff's claims against Comcast, as distributor of NHL and MLB games, and his Comcast service was the allegation that his DIRECTV package contained material produced by the Comcast. Here too, the sole nexus between Dr. Wexler's claim against Defendant AT&T Corp. is that her Mobility cell phone received content – recorded phone calls and messages – sent by AT&T Corp. The calls at issue had nothing to do with Plaintiff's former service with AT&T Mobility and Plaintiff is not relying on any contractual terms with AT&T Moblity to pursue her claim against AT&T Corp. Thus, this Court should similarly deny the content distributor, AT&T Corp.'s, motion to compel based on an arbitration agreement between plaintiff and the service provider, Mobility. In fact, the parties' relationship in the present matter are even further removed than in *Laumann*, because although Silver had additional Comcast services, Dr. Wexler has never had any additional AT&T Corp. service.

Tellingly, Defendant does not dispute the soundness of binding Second Circuit authority regarding an alternative equitable estoppel theory in *Ragone* and *Sokol*. Instead, it makes a big to-do about courts outside of this Circuit enforcing the Mobility Agreement. Defendant apparently seeks to skirt Second Circuit authority and have this Court apply the factual findings of courts outside this Circuit that have evaluated the provisions contained in an agreement between Mobility and its customers. Yet, all of the cases Defendant cites are distinguishable because either: a) the plaintiffs and AT&T entity entered into an agreement, and thus it was not

seeking to enforce arbitration as a non-signatory[5]; b) plaintiffs themselves intermingled the parties by brining suit against multiple AT&T entities[6] or, c) as is the case in every single case, it did not apply applicable Second Circuit law[7].

In the Second Circuit, however, Defendant's tactic of attempting to render an agreement enforceable based on past factual circumstances is impermissible pursuant to case law which holds that "the estoppel inquiry is fact-specific" (*Ross*, 547 F.3d at 144) and requires a "careful review" of the relationships, contracts, and issues. *Ragone*, No. 07 Civ. 6084 (JGK), 2008 WL 4058480, at *8. Moreover, this Court should follow binding Second Circuit precedent and evaluate the factual issues unique to the present case, including the relationship of the parties, the unrelated nature of Plaintiff's TCPA claims as compared to the Mobility Agreement, and Defendant AT&T's inability to produce admissible evidence of an arbitration agreement. Because the parties, contract, and controversies are not intermingled, Plaintiff should not be

---

[5] *See, e.g., Coneff v. AT&T Corp.*, 673 F.3d 1155, 1156-57 (9th Cir. 2012) ("Plaintiffs are current and former customers of Defendants); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1206 (11th Cir. 2011) ("The Plaintiffs in this case are customers of Defendant AT&T Mobility, LLC, a cellular phone company"); *O'Conner v. AT&T Corp.*, 2013 WL 3107496, at *2-*3 (M.D. La. June 18, 2013) (putative class of consumer who entered into wireless service agreements with AT&T Corp.); *McGreal v. AT&T Corp.*, 892 F. Supp. 2d 996, 1003 (N.D. Ill. 2012) (granting motion to compel arbitration to which plaintiff did not respond, applying Seventh Circuit law); *In re Apple iPhone 3G Prods. Liab. Litig.*, 859 F. Supp. 2d 1084, 1093-97 (N.D. Cal. 2012) (plaintiff alleged they entered into agreements with AT&T, applying California law); *In re Apple & AT&TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1172 n.5 (N.D. Cal. 2011) ("[I]t was undisputed that Plaintiff signed an arbitration agreement with Defendant ATTM which included a waiver."); *Hendricks v. AT&T Mobility, LLC*, 823 F. Supp. 2d 1015, 1017 (N.D. Cal. 2011) (plaintiff was customer of defendant and both were party to the contract); *Kaltwasser v. AT&T Mobility LLC*, 812 F. Supp. 2d 1042, 1046-51 (N.D. Cal. 2011) (plaintiff had contract with ATTM); *Nelson v. AT&T Mobility LLC*, 2011 WL 3651153, at *2 (N.D. Cal. Aug. 18, 2011) (plaintiff did not dispute that his contract with ATTM included clause that required arbitration of his claims); *Boyer v. AT&T Mobility Servs.*, 2011 U.S. Dist. LEXIS 80607, *7 (S.D. Cal. July 25, 2011) ("The parties do not dispute the existence of an arbitration agreement, its terms, or that the agreement involves interstate commerce."); *In re Apple*, 2011 U.S. Dist. LEXIS 78276. *5 (N.D. Cal. July 19, 2011) ("The plaintiffs are all ATTM-[Defendant] customers."); *Sherman v. At&T Inc.*, 2012 U.S. Dist. LEXIS 40394, *4-5 (N.D. Ill. Mar. 26, 2012) (the contract for internet service at issue here [between plaintiff and defendant]).

[6] *See Blau v. AT&T Mobility*, 2012 WL 10546, at *2, *8-9 (N.D. Cal. Jan. 3, 2012) (plaintiff brought suit under AT&T Mobility agreement, but brought suit against both AT&T Mobility and AT&T Inc.); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1256-67 (10th Cir. 2012) (plaintiffs are individuals who purchased U-verse) …"the other 10 named defendants" included multiple AT&T entities, and court enforced different agreement).

[7] *Laster v. T-Mobile USA, Inc.*, 2013 WL 4082682, at *15-16 (S.D. Cal. July 19, 2013) (applying Ninth Circuit law)

18

estopped from avoiding arbitration with an entity who is not a signatory to the purported arbitration agreement for a claim unrelated to that agreement.

> ### d. Defendant's Automated or Prerecorded Calls Made After Dr. Wexler Terminated Her Contract with Mobility Did Not "Arise out of" or "Relate to" that Agreement, and Are Thus Beyond the Scope of Its Arbitration Clause.

Plaintiff's claims do not arise out of or relate to any agreement with AT&T Moblility. But instead based on AT&T Corp.'s completely independent violations of federal law. *See Cape Flattery Ltd. v. Titan Mar., LLC,* 647 F.3d 914, 924 (9th Cir. 2011) (collecting authorities) ("A tort claim is not arbitrable just because it would not have arisen 'but for' the parties' agreement…When a tort claim constitutes an 'independent wrong from any breach' of the contract it 'does not require interpretation of the contract and is not arbitrable."); *Smith v. Steink*amp, 318 F.3d 775, 776 (7th Cir. 2003); *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995).

In *Smith v. Steinkamp*, the Seventh Circuit held that an arbitration clause in a payday loan agreement that governed "disputes arising under this agreement" did not apply to future disputes, including disputes over future loan agreements. 318 F.3d 775, 776, 778 (7th Cir. 2003). In fact, the *Steinkamp* panel went further and stated that allowing the arbitration clause in the payday loan agreement to apply to statutory and tort claims arising after the transactions regarding that loan were completed would lead to "absurd results." *Id.* at 777. This case was cited with approval recently by district courts in this Circuit. *Sherrod v. Time Warner Cable, Inc.*, 2014 U.S. Dist. LEXIS 163393, *13 (S.D.N.Y. Nov. 21, 2014) (finding jury waiver provision did not extend to plaintiff's TCPA claim); *Laumann*, 989 F. Supp. 2d at 339 n.41 (S.D.N.Y. 2013).

To contradict this sound reasoning, Defendant cites only one district case from this Circuit, decided over a decade prior to *Sherrod* and *Laumann*, and before *Steinkamp* was decided. *See Bank of Am., N.A. v. Diamond State Ins. Co.*, 2002 U.S. Dist. LEXIS 23225, *8-9 (S.D.N.Y. Dec. 3, 2002) (finding a valid arbitration agreement existed between plaintiff and defendant until novation).

> **e. Dr. Wexler's TCPA Claim Neither Relies on the Third Party Mobility Agreement nor Involves an Alleged Breach of Duties Created by That Agreement.**

If this Court reaches the terms of the inadmissible arbitration agreement that Defendant seeks to invoke in this case, its application is guided by the summary provide in the Notice of Revised Arbitration Clause, stating that that the Notice of Revised involves "customer concerns" that can be resolved by "AT&T's customer service department." Def.'s Mot to Compel Arb. White Decl., Ex. 1, p. 1. With that in mind, it applied to "all disputes and claims" ... "includes, but is not limited to any controversy or claim arising out of or relating to this agreement." Def.'s Mot to Compel Arb. White Decl., Ex. 1, p. 2. Calls from AT&T Corp. regarding U-Verse is not a customer concern of AT&T Mobility and any claim against AT&T Corp. is not based on or intertwined with any purported Mobility Agreement. *See Irelyn re Jiffy Lube Int'l, Inc.*, 2012 U.S. Dist. LEXIS 31926, *27-28 (S.D. Cal. Mar. 8, 2012) (denying a motion to compel arbitration *by a party* to the arbitration agreement and holding that "the existence of the original contract may have been the 'but for' cause of the alleged TCPA violation, but this alone is not necessarily enough to establish that the claim arises out of or relates to the contract."); *Joseph v. TrueBlue, Inc.*, 2015 U.S. Dist. LEXIS 17403, *6-7 (W.D. Wash. Feb. 11, 2015) (Denying motion to compel arbitration where parent company claimed it was a beneficiary of arbitration agreement with subsidiary where plaintiff was not claiming the benefits of the contract with subsidiary and where plaintiff's TCPA claim was not inextricably intertwined with the contract

even if Defendant and subsidiary bear a close relationship.)

Courts interpreting similar language have required that the plaintiff's claim depend in some way on the existence or the terms of the contract in order for the claim to be arbitrable. *See Dr. Kenneth Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 41 F.3d 243, 250-51 (5th Cir. 1998) ("courts look at the facts giving rise to the action and whether the action could be maintained without reference to the contract") (internal quotations omitted); *Riley v. Lucas Lofts Investors, LLC*, 412 S.W.3d 285, 291 (Mo. App. 2013) ("for a tort claim to be subject to arbitration under a broad arbitration clause, it must raise some issue the resolution of which requires reference to or construction of some portion of the parties' contract"); *Clay v. New Mexico Title Loans, Inc.*, 288 P.3d 888, 896 (N.M. App. 2012) (finding dispute not subject to arbitration because "when we hold [the plaintiff's] claims up against the agreement, we do not see overlap" (internal quotations and alterations omitted).

Another formulation of the contractual relatedness test is whether the duty alleged in the plaintiff's complaint to have been breached is one that arose out of the contractual relationship or is one that the defendant would owe to anyone, including third parties. *E.g. Seifert v. U.S. Home Corp.*, 750 So.2d 633, 641 (Fla. 1999) (finding plaintiffs' claims for wrongful death and negligent failure to warn to be outside the scope of the arbitration clause with defendant home builder because they implicated common law duties that the defendant owed to all members of the public, including invited guests, who might be injured by its tortious conduct).

Under the logic of these well-reasoned opinions, Dr. Wexler's TCPA claim against Defendant AT&T Corp. does not arise out of or relate to her service agreement with Mobility as its customer. Not only was there never any contractual relationship between Dr. Wexler and Defendant for the reasons discussed above, but even if there was a contract with AT&T

Mobility, that contract is completely independent from and does not give rise to the Dr. Wexler's TCPA claim. No contested issue presented by Dr. Wexler's claim (as opposed to this arbitration dispute presented by Defendant) requires reference to the Mobility contract. And, like the common law duties at issue in *Seifert*, the statutory duty not to use predictive dialer or autodialer technology to make unsolicited phone calls is a duty that Defendant owes equally to all members of the public by virtue of the TCPA.

Defendants' argument that because Mobility provided Dr. Wexler's cellular service it can compel arbitration of a claim based on a call to a phone connected to that cellular service fails. The automated and prerecorded voice and/or autodialed calls and messages here were not related to a wireless account that Dr. Wexler previously had with Mobility. Rather, the calls related to the U-Verse television services that another individual had with Defendant AT&T Corp. AT&T Corp. would have made these calls even if Plaintiff never had an AT&T Mobility account. This relationship is much more tenuous than the relationship set forth in *Laumann*. *Laumann*, 989 F. Supp. 2d at 338 (denying Comcast's motion to compel arbitration based on claim arising from plaintiff's other television service). The coincidence, and inevitability, that Plaintiff contracted for a service through which a non-signatory allegedly violated the law resulted in such an "attenuated relationship" that referral of claim to the arbitrator would only waste time and resources. *Id*.

Nor does the language in the Mobility agreement stating that the arbitration clause will survive termination of the agreement affect the analysis. The agreement would not apply even if Dr. Wexler was still an AT&T Mobility customer. Her TCPA claims do not arise out of or relate to the contract at all, and thus do not fall into the language of the arbitration clause. This is not a situation where the Dr. Wexler's claims did arise under the contract's language, and she now

attempts to evade arbitration by saying that the contract's language was no longer operative because the contract had terminated.

Put another way, the language about the arbitration clause surviving termination does not eviscerate the "arising out of or related to" requirement in the arbitration clause. Even a clause with such indefinite temporal reach still must intersect with a claim in more than a superficial "but for" sense in order for that claim to be arbitrable. *See Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781, 784-85 (10th Cir. 1998) (analyzing categories of claims not extinguished by a settlement agreement to determine whether they arose under or related to a previous manufacturing agreement, and finding only the related claims to be arbitrable); *Green Tree Servicing, L.L.C. v. Fisher*, 166 P.3d 944, 947 (Okla. Civ. App. 2007) (holding that statutory consumer law claims did not relate to a contract and thus fell outside its arbitration clause where the acts comprising the alleged violations occurred after the contract had been terminated and did not arise from duties imposed by the contract).

In short, under the various tests that courts throughout the country have established to determine whether a statutory or tort claim "arises out of or relates to" an agreement containing an arbitration clause, making that claim subject to arbitration, Dr. Wexler's TCPA claim is not arbitrable. Her claim neither derives from, relies upon nor overlaps with the Mobility agreement, which had been canceled before Defendant made the phone calls at issue. Indeed, because the relationship between the Dr. Wexler and Defendant for the relevant time period when the calls occurred changed from being governed by the Mobility Agreement, the duties Defendant owed to Dr. Wexler, and that the complaint alleges it breached, were the same as the duties it would owe any third party. If Defendant's AT&T Corp.'s reasoning were accepted, then any company that ever sold a product or service to a consumer in a transaction including an arbitration

agreement would thereafter be able to send any dispute with that consumer about virtually anything to arbitration because they had once done business together. As Judge Posner noted in *Steinkamp*, such an expansive reading of arbitration provisions would lead to "absurd results," such as the payday lender being able to send into arbitration claims for wrongful death or conversion arising years after the agreement if an agent of the lender killed a borrower or picked his pocket in order to recover an unpaid debt. 381 F.3d at 77. Defendant's interpretation of this arbitration clause risks the same sorts of absurd results that courts have warned against and it should not be countenanced.

### f.   The Revised Arbitration Agreement Is Unenforceable Because The Mobility Contract Permits Unilateral Changes Without Reasonable, Fair Notice.

Without the actual Mobility Contract, it is impossible to evaluate the terms of that contract between Dr. Wexler and Mobility. If this Court overlooks that the records attached to Bates' declaration are inadmissible hearsay, however, the supposed Mobility Contract contains an illusory promise on Mobility's behalf that renders it unenforceable. Thus, regardless of what notice was provided, the Mobility Contract's unilateral and unrestrained "Changes to Terms and Rates" provision renders the arbitration agreement unenforceable.

The clause at issue is one which provides no practical limit on Mobility's ability to make unilateral changes to the arbitration agreement:

> We may change *any* terms, conditions, rates, fees, expenses or charges regarding your service *at any time*. We will provide you with notice of such changes … either in your monthly bill *or separately*.

Bates Decl., Ex. 2, p. 6 (emphasis added).

"One of the most common types of promise that is too indefinite for legal enforcement is the promise where the promisor retains an unlimited right to decide later the nature and extent of his performance. This unlimited choice in effect destroys the promise and makes it illusory."

24

*Sadowski v. Dell Computer Corp.*, 268 F. Supp. 2d 129, 136 (D. Conn. 2003); *see also Wagman v. Chater*, 1996 U.S. Dist. LEXIS 5753, *7 (S.D.N.Y. Apr. 29, 1996). An illusory promise "actually promises nothing." *Klauber Bros., Inc. v. Westchester Lace, Inc.*, 1989 U.S. Dist. LEXIS 3169, *10 (S.D.N.Y. Mar. 30, 1989).

Courts have found that a variety of changes in terms provisions allowed insufficient or unreasonable notice. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) (denying defendants' motion to compel arbitration where plaintiff lacked inquiry notice of the arbitration provision); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), aff'd 380 F. App'x 22 (2d Cir. 2010) (refusing to enforce arbitration provision where plaintiff "lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions"); *see also Douglas v. Johnson Real Estate Investors, LLC*, 470 F. App'x 823, 825 (11th Cir. 2012); *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *Roling v. E*Trade Sec, LLC*, 756 F. Supp. 2d 1179, 1190-91 (N.D. Cal. 2010) (finding modification that required user to check website for revised terms unenforceable because it allowed unilateral changes in the terms without notice). Here, customers here were not guaranteed actual notice or any particular form of notice, not given the option to opt-out of their contracts if they did not want to accept the unilateral change in terms, and not given a reasonable time in which decide whether to take or leave the new arbitration clause.

## IV.     CONCLUSION

Defendant has failed to meet its burden to show Plaintiff agreed to arbitrate her TCPA claims against Defendant AT&T Corp. Defendant failed to establish that an arbitration

agreement even existed and failed to demonstrate that Defendant as a third party could enforce any such agreement. Moreover, the third party agreement was intended to apply only to Plaintiff's status as a customer of a different company and Plaintiffs claims in this case do not arise nor are intertwined with any AT&T Mobility Agreement. Therefore, Defendant AT&T Corp.'s Motion to Compel Arbitration pursuant to a third-party agreement should be denied.


Dated:  July 23, 2015


                                   Respectfully submitted,

                                   /s/ Shimshon Wexler
                                   Shimshon Wexler
                                   The Law Offices of Shimshon Wexler, PC
                                   216 West 104th St., #129
                                   New York, New York 10025
                                   Tel: (212)760-2400
                                   Fax: (917)512-6132
                                   swexleresq@gmail.com

26