MAYER·BROWN

Mayer Brown LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel +1 202 263 3000
Main Fax +1 202 263 3300
www.mayerbrown.com

**Evan M. Tager**
Direct Tel +1 202 263 3000
Direct Fax +1 202 830 3300
etager@mayerbrown.com

January 30, 2017

Honorable Frederic Block
United States District Court for the Eastern District of
New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Wexler v. AT&T Corp.*, No. 15-cv-686 (FB-PK)

Dear Judge Block:

Pursuant to the Court's instructions at the January 13, 2017 pre-motion conference, defendant AT&T Corp. ("AT&T") respectfully submits this letter brief to explain why plaintiff Dr. Eve Wexler is an inadequate representative of the proposed class and why the Court therefore should strike the class allegations in Dr. Wexler's complaint.[1]

## BACKGROUND AND INTRODUCTION

Dr. Wexler filed this putative class action on February 11, 2015, naming AT&T as a defendant. Compl. ¶ 5. She filed an amended complaint on March 12, 2015. *See* Am. Compl. (Dkt. #4). Dr. Wexler alleges that an AT&T entity violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by using an automatic telephone dialing system to place calls to her mobile phone in an effort to reach a customer of its television service named Paul McPherson. *Id.* ¶¶ 9-26, 37-42. Dr. Wexler seeks to represent a putative nationwide class of individuals who received wrong-number calls from AT&T on their cell phones via an automatic telephone dialing system. As counsel for Dr. Wexler acknowledged during the untranscribed portion of the January 13 conference, however, they do not know the identity of any other member of the putative class and hence, absent some revelation, would not be able to pursue a class action in the event that the Court concludes that Dr. Wexler is not an adequate class representative.

---

[1]   In a letter opposing the scheduling of the pre-motion conference, counsel for Dr. Wexler took the position that it would be inappropriate for this Court to resolve the issue of Dr. Wexler's adequacy as a class representative at this stage of the case. *See* Dkt. #42; *see also* Dkt. #37. During the pre-motion conference, the Court expressed skepticism about that contention, and counsel for Dr. Wexler effectively withdrew it, declaring that AT&T had "already won" on the issue. *See* 1/13/17 Tr. 3-5. Accordingly, unless the Court requests it, we will not brief the question whether inadequacy of the class representative is a permissible subject of a motion to strike the class allegations.

Mayer Brown LLP operates in combination with other Mayer Brown entities (the "Mayer Brown Practices"), which have offices in North America, Europe and Asia and are associated with Tauil & Chequer Advogados, a Brazilian law partnership.

Honorable Frederic Block
January 30, 2017
Page 2

When Dr. Wexler originally filed this lawsuit, she was represented only by her husband, Shimshon Wexler of the Law Offices of Shimshon Wexler, PC. Dkt. #1, at 11. When Dr. Wexler filed an amended complaint on March 12, 2015, she continued to be represented solely by her husband. Dkt. #4, at 11. Five days later, she added as counsel James S. Giardina of the Consumer Rights Law Group, PLLC. *See* Dkt. #5. Notwithstanding the addition of Mr. Giardina, Shimshon Wexler continued to play a leading role in this case; he often served as the sole signatory on briefs and letters to the Court[2] and participated actively in the hearing on AT&T's motion to compel arbitration as well as in the pre-motion conference that preceded it.

In her amended complaint, Dr. Wexler states that "[she] and her attorney*s*"—*i.e.*, both of them—"will fairly and adequately protect the interests of the Class." Amend. Compl. ¶ 32 (emphasis added). At the time the amended complaint was filed, Dr. Wexler thus proposed to have this Court appoint her husband as class counsel. As AT&T pointed out in letters sent to this Court on September 26, 2016 (Dkt. #36), and October 28, 2016 (Dkt. #39), this proposal created an inherent conflict of interest that precluded Dr. Wexler from adequately representing the interests of the class. That is because, in a class action, the risk that the lawyer will promote his own financial interest over those of the class members is manifest (*see* 9/15/16 Oral Arg. Tr. 4), and allowing the lawyer's spouse to serve as class representative elevates this risk to an unacceptable level—imperiling the integrity of the class-action device.

In a letter to this Court that can only be viewed as an implicit acknowledgment of the impropriety of this arrangement, Mr. Giardina stated that Shimshon Wexler would be withdrawing from the case and a new law firm would be retained as proposed class counsel. In that letter, Mr. Giardina stated that Shimshon Wexler "will not be entitled to any share of any attorney fees recovered in this case, but may seek to petition the Court for quantum meruit only for the work done prior to his withdrawal." Dkt. #42. On November 18, 2016, Shimshon Wexler withdrew from the case and Keith Keogh of Keogh Law Ltd. was substituted in his place. Dkt. #44.

Nevertheless, Dr. Wexler remains an inadequate representative for three reasons. *First*, notwithstanding her husband's withdrawal as counsel, Dr. Wexler retains a financial interest that is antagonistic to the class's best interest because Shimshon Wexler evidently intends to petition this court to award him attorney's fees from any class recovery for work performed prior to his withdrawal. Ordinarily, it would be the job of the class representative to either oppose such an award outright or at least argue that any award should be modest. But a class representative manifestly cannot be expected to perform that function effectively (if at all) when the attorney requesting the quantum meruit award is her spouse. Not only would it be unrealistic for her to

---

[2]   *See, e.g.*, Dkt. #25 (opposition to AT&T's motion to compel arbitration); Dkt. #28 (notice of supplemental authority); Dkt. #31 (additional notice of supplemental authority); Dkt. #37 (response to AT&T's letter requesting a pre-motion conference on motion to strike class allegations).

publicly take a position adverse to her husband's position, but because they share finances, it would also be against her own personal interest to do so. In other words, she has an outright conflict of interest as a result of her husband's intention to seek a quantum meruit award of attorney's fees. *Second*, in a situation much like this one, Judge Kocoras of the Northern District of Illinois held that the mere possibility that an attorney who is married to the class representative may have some "expectation of a return favor" from class counsel precluded allowing his wife to serve as a class representative. *Swift v. First USA Bank*, 1999 WL 1212561, *6 (N.D. Ill. Dec. 15, 1999). *Third*, the very fact that Dr. Wexler acquiesced to her husband's desire to be appointed class counsel demonstrates that she fundamentally misunderstands the importance of a class representative's responsibility to monitor class counsel and hence is no more adequate now than she was before her husband withdrew.

Because Dr. Wexler is an inadequate class representative as a matter of law, this Court should strike the class allegations from the complaint.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(f), the Court may strike from the pleadings any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 23(c)(1) requires courts to determine "at an early practicable time" whether the proposed class satisfies the requirements for class certification, and Rule 23(d)(1)(D) allows courts to "require [that] the pleadings be amended to eliminate allegations about representation of absent persons."

## ARGUMENT

### DR. WEXLER IS AN INADEQUATE CLASS REPRESENTATIVE AS A MATTER OF LAW.

**A.   Rule 23(a)(4) Mandates That A Class Representative Be Free Of Potential Conflicts And Must Adequately Represent The Interests Of The Class.**

Under Federal Rule of Civil Procedure 23(a)(4), the class representative must "fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) seeks to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As Judge Posner has explained, to protect the interests of absent class members, "[t]here ought . . . to be a genuine arm's-length relationship between class counsel and the named plaintiffs." *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).

A conflict-free representative is essential because "[c]lass actions are an exception to the rule that only the named parties conduct and are bound by litigation." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). "'In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Id.* (quoting *Wal-*

Mayer Brown LLP

Honorable Frederic Block
January 30, 2017
Page 4

*Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011)); *see also* 7A C. ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1769.1, at 442 (3d ed. 2005) ("[B]ecause of the broad binding effect of class-action judgments, serious attention is given to the adequacy of representation of those absent class members who will be bound by the judgment."). Rule 23(a)(4) also reflects the "Due Process Clause['s] . . . require[ment] that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *see also In re Payment Card*, 827 F.3d at 231 (noting the connection between Rule 23(a)(4) and the Due Process Clause).

"Adequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (quoting *Denny v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006)); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("[A]dequacy of representation entails inquiry as to whether . . . plaintiff's interests are antagonistic to the interest of other members of the class.").

As we discuss in the next section, a marital relationship between class counsel and a class representative creates an inherent conflict of interest that renders the class representative inadequate as a matter of law.[3] And as we discuss in the final section, that conflict has not been cured by Shimshon Wexler's withdrawal from the case.

### B. A Marital Relationship Between Class Counsel and A Class Representative Creates An Inherent Conflict Of Interest.

When the class representative and proposed class counsel are spouses, there is no "genuine arm's-length relationship" (*Redman*, 768 F.3d at 638)—quite the opposite. Marriage is "the most important relation in life" (*Maynard v. Hill*, 125 U.S. 190, 205 (1888)), and this ancient institution "allows two people to find a life that could not be found alone, for a marriage becomes greater than just the two persons." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594 (2015). Even in more mundane terms, there is an inherent conflict of interest because the class representative has a personal financial interest in her lawyer-spouse receiving a higher share of attorney's fees—an interest that is directly contrary to the best interests of the class. Accordingly, in the rare cases in which a lawyer has the chutzpah to use his or her spouse as the named plaintiff, courts generally deem the spouse to be an inadequate class representative. *See, e.g.*, *Zylstra v. Safeway Stores, Inc.*, 578 F.2d 102, 104 (5th Cir. 1978) (adopting per se rule disqualifying attorneys from serving as class counsel if they are married to a class

---

[3] To be clear, if Dr. Wexler had sued AT&T under the TCPA on an individual basis, nothing would have prevented her husband from serving as her attorney. But given the Wexlers' decision to bring this case as a putative class action, it is clear that their real goal has always been an attorney's fee award that would dwarf any damages Dr. Wexler could obtain under the TCPA.

Honorable Frederic Block
January 30, 2017
Page 5

representative); *Turoff v. May Co.*, 531 F.2d 1357, 1360 (6th Cir. 1976) (plaintiffs were inadequate class representatives because "three are attorneys with the law firm of counsel and the fourth is the wife of one of them"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154-55 (8th Cir. 1999) (disqualifying class counsel because class representatives were the husband and sister-in-law of a partner of the firm).[4]

As Judge Owen explained over 40 years ago, when the class representative and class counsel are spouses, the "potential conflict of interest . . . is obvious." *Stull v. Pool*, 63 F.R.D. 702, 704 (S.D.N.Y. 1974). After all, "[n]o union is more profound than marriage, for it embodies the highest ideals of love, fidelity, devotion, sacrifice, and family." *Obergefell*, 135 S. Ct. at 2608. Doubtless Dr. Wexler and her husband would agree with that sentiment when it comes to their own marriage. But the very strength of that union—which is generally something to be celebrated—shows why it has no place in the relationship between a class representative and counsel for the class.

Even setting aside the emotional attachments associated with marriage, married couples usually share assets and expenses. It is therefore manifest that any fee obtained by a class counsel will also benefit his spouse; and here, that benefit would have accrued to Dr. Wexler, given her spousal relationship to class counsel, not because of her status as class representative. *See Stull*, 63 F.R.D. at 704.

The financial bond that accompanies the marital relationship, standing alone, creates an inherent conflict of interest. That is because "the possible recovery of [the class representative] as a member of the class is far exceeded by the financial interest she and her husband, as a marital unit, might have in the legal fees engendered by this lawsuit." *Id.* Put simply, when a class representative has a financial stake in her spouse's legal practice as class counsel, the law presumes that she will act economically rationally by accepting a lower settlement for the class in exchange for a more generous award of attorney's fees for her spouse.

---

[4] Indeed, courts have barred individuals with *less* profoundly close familial relationships to class counsel from serving as class representatives. *See, e.g., Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014) (Posner, J.) ("The impropriety of allowing [an individual] to serve as class representative as long as his son-in-law was lead class counsel was palpable."); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 95 (7th Cir. 1977) (conflict of interest existed because class representative and class counsel were brothers); *McDonough v. Toys R Us, Inc.*, 638 F. Supp. 2d 461, 478 (E.D. Pa. 2009) (plaintiff was inadequate representative because she was the sister of class counsel); *In re Microsoft Corp. Antitrust Litig.*, 214 F.R.D. 371, 374-75 (D. Md. 2003) (plaintiff was inadequate representative because she was the sister-in-law of class counsel); *Zlotnick v. TIE Comm. Inc.*, 123 F.R.D. 189, 193-94 (E.D. Pa. 1988) (plaintiff was inadequate representative because he was the father of class counsel); *Kirby v. Cullinet Software, Inc.*, 116 F.R.D. 303, 309 (D. Mass. 1987) (plaintiff was inadequate representative because he was the father of class counsel); *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 7 (N.D. Ill. 1977) (plaintiffs were inadequate representatives because class counsel was their son).

In short, it is entirely inappropriate for the spouse of class counsel to serve as a class representative—much less the sole class representative—as Dr. Wexler seeks to do. Indeed, Shimshon Wexler appears to have belatedly recognized as much. But as we next explain, his withdrawal from the case does not cure his wife's inadequacy as a class representative.

### C. Dr. Wexler Remains An Inadequate Representative Notwithstanding Her Husband's Belated Recognition That He Cannot Serve As Class Counsel.

As the foregoing demonstrates, Dr. Wexler was an inadequate representative when she first proposed to appoint her husband as class counsel. She remains an inadequate representative, notwithstanding her husband's withdrawal, for three reasons.

*First*, there is still an inherent conflict of interest—indeed, an even starker one—stemming from Shimshon Wexler's reservation of the right to seek a quantum meruit fee award for his prior work in this case. The amount that he ultimately requests is likely to be substantial—far in excess of the value of his wife's claim.

In January 2015, Shimshon Wexler filed an affidavit in support of a motion for attorney's fees in a different class settlement in this district. In that affidavit, Shimshon Wexler stated that his hourly billing rate was $300. Declaration of Shimshon Wexler In Support of Mot. for Final Approval of Class Settlement Agreement at 4, *Katz v. ABP Corp.*, No. 12-cv-4173 (E.D.N.Y. Jan. 27, 2015),, Dkt. #60-3 ("Wexler Aff."). It is likely higher now, but for purposes of this motion we will assume that he will request $300 per hour for his time. Prior to his withdrawal from this case, Shimshon Wexler's signature appeared on the complaint (Dkt. #1), the amended complaint (Dkt. #4), the opposition to AT&T's motion to compel arbitration (Dkt. #25), two notices of supplemental authority (Dkt. #28, #31), and a response to AT&T's letter requesting a pre-motion conference on this motion (Dkt. #37). Shimshon Wexler also participated in the hearing on AT&T's motion to compel arbitration, as well as the pre-motion conference. At a $300 hourly billing rate, it would not be surprising if Shimshon Wexler were to request a quantum meruit fee award in the multiple tens of thousands of dollars.

One of the core functions of a class representative is to police requests for attorneys' fees that will reduce the amount of damages paid to the class members. "Since [the] possible recovery of the class representative is far exceeded by potential attorney's fees, courts fear that a class representative who is closely associated with the class attorney will allow settlement on terms less favorable to the interests of absent class members." *Schroder v. Suburban Coastal Corp.*, 729 F.2d 1371, 1375 (11th Cir. 1984); *see also, e.g., McDonough*, 638 F. Supp. 2d at 478 ("Courts sometimes express concern about close relationships between class representatives and counsel because . . . the plaintiff might want to maximize the counsel's fee award to the detriment of class members."). That is all the more true when there is likely to be ***both*** a percentage-based fee request from class counsel ***and*** a quantum meruit fee request from former counsel. Yet if anything, Dr. Wexler is even less capable of resisting her husband's request for a quantum meruit award of attorney's fees than she would have been to police his request for a percentage-based fee award were he still class counsel. That is because resisting the quantum

Honorable Frederic Block
January 30, 2017
Page 7

meruit award outright, or even arguing for a more modest amount of fees, would require her to publicly upbraid her husband for incurring fees on a case that the law precluded him from bringing as a class action if she was to be the sole class representative. It is entirely unrealistic to expect her to do that. Moreover, because she shares finances with her husband, it would also be against her own personal interest to resist his request for a substantial quantum meruit award—especially because it is a virtual certainty that the amount requested would far exceed the amount of her damages. In short, the prospect of a request for a quantum meruit fee award confronts Dr. Wexler with an intractable conflict of interest that precludes her from serving as a class representative as a matter of law.

*Second*, even apart from the prospect that Shimshon Wexler will ask the Court to award him attorney's fees on a quantum meruit basis from a class settlement or judgment, the fact that he was the driving force behind the lawsuit and then effectively gifted it to Mr. Giardina and Mr. Keogh gives rise to an appearance of impropriety that precludes his wife from serving as a class representative—notwithstanding his withdrawal from the case.

The closest case on point is *Swift v. First USA Bank*, 1999 WL 1212561 (N.D. Ill. Dec. 15, 1999). In *Swift*, the purported class representative's husband (an attorney) entered into a fee-splitting/finder's fee agreement with class counsel. The agreement provided that class counsel would pay the husband 10% of the class fees and 30% of the fees attributable to his wife's individual claim. The court stated that this "arrangement represented a potential windfall to both Mr. and Mrs. Swift." *Id.* at *6. And, critically for this case, even though the husband subsequently "waived any potential fees expressly to avoid impacting [his wife's] ability to be class representative," the court determined that "the appearance of an expectation of a return favor lingers on." *Id.* The court explained that "[t]he relationship between counsel and the class representative or her close relations can disqualify the named representative when the appearance exists that the representation was motivated by an expectation of a return favor." *Id.* And it noted that even though the husband had renounced his finder's fee, "it is not beyond the realm of reasonable doubt that the parties could have cooked up an under-the-table deal for a 'finders fee.'" *Id.* Although stating that it was "not suggest[ing] or assum[ing] that [class counsel, the class representative, and her husband] would change a mere appearance into an actual occurrence," the court concluded that "the relationship between [the class representative] and [class counsel] is branded with ***the appearance of, and potential for, impropriety***." *Id.* (emphasis added).[5] Given these concerns, the court denied class certification and ordered class counsel to find a new named representative if the suit were to proceed as a class action. *See id.*

The situation here is quite analogous. As in *Swift*, the plaintiff's husband was the driving

---

[5] See also, e.g., *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995) ("The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel. . . . The 'appearance' of divided loyalties refers to differing and potentially conflicting interests and is not limited to instances manifesting such conflict.").

force behind the litigation (though in *Swift*, unlike here, the husband did it from behind the scenes). And as in *Swift*, once caught with his hand in the cookie jar, the husband tried to salvage his wife's role as class representative by renouncing his financial interest in the case (although here, unlike in *Swift*, Shimshon Wexler continues to have a financial interest as a result of his reservation of the right to seek a quantum meruit award of attorney's fees). We do not mean to suggest that Messrs. Giardina and Keogh have agreed to a *quid pro quo* arrangement with Shimshon Wexler, but here, as in *Swift*, the "**appearance** of, and potential for, impropriety" remains and "disqualif[ies] the named representative" because "the **appearance** exists that the representation was motivated by an expectation of a return favor."

Another case that supports refusing to permit Dr. Wexler to serve as class representative in view of the taint caused by her husband's original—and ongoing—financial stake in the litigation is *English v. Apple, Inc.*, 2016 WL 1188200 (N.D. Cal. Jan. 5, 2016). In *English*, two of the three original named plaintiffs in a purported class action were former or current employees of class counsel, who had provided them with funds to buy the service that was the subject of the lawsuit and instructed them to tape record the purchase. Prior to the court's decision denying class certification, these two named plaintiffs left the case and class counsel brought in co-counsel who had no prior relationship with the two tainted former plaintiffs. The court nevertheless denied certification because "[c]lass counsel's prior relationship [with the two former named plaintiffs] and her involvement in their purchase [of the service] continue to taint th[e] case." *Id.* at *13. Although acknowledging the removal of the two plaintiffs and the addition of co-counsel, the court held that those changes only "alleviate[d] these concerns to some degree, but not enough to preclude them from weighing against class certification." *Id.* Here too, the withdrawal of Shimshon Wexler at most only "alleviate[s] the[] concerns [about Dr. Wexler's adequacy as a class representative] to some degree," but not enough to justify allowing her to continue in that role—especially given her husband's continued financial stake in the case and likely influence over the decisions she would be asked to make as class representative.

*Sipper v. Capital One Bank*, 2002 WL 398769 (C.D. Cal. Feb. 28, 2002) further supports our contention that the addition of new counsel and withdrawal of Shimshon Wexler cannot purge the taint of the original impropriety. *Sipper* involved a lawyer who had significant business dealings with one of the named plaintiffs. Even though the lawyer brought in additional counsel, and there were other named plaintiffs, the district court denied class certification, explaining that "neither the mere addition of different plaintiffs nor of different class counsel can save this particular action from the appearance of impropriety." *Id.* at *5. Here too, the original role played by Shimshon Wexler, his wife's acquiescence in it, and current counsel's acquiescence in Shimshon Wexler's desire to seek a quantum meruit award of attorney's fees should make the Court "firmly convinced that this particular piece of litigation has spun out of the class representative's control and [that] maintenance of the legal fiction could irreparably harm the interests of non-present class members." *Id.* at *4.

*Third*, as already alluded to, "class action law presumes that a function of the class representative is to monitor class counsel." 1 WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS

Honorable Frederic Block
January 30, 2017
Page 9

ACTIONS § 3:70, at 391 (5th ed. 2013). "The named plaintiffs are the representatives of the class—fiduciaries of its members—and therefore charged with monitoring the lawyers who prosecute the case on behalf of the class (class counsel)." *Eubank*, 753 F.3d at 719 (Posner, J.); *accord In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (2d Cir. 1995) ("The protection of the absentees' due process rights depends in part on the extent the named plaintiffs are adequately interested to monitor the attorneys."); *Serna v. Big A Drug Stores, Inc.*, 2007 WL 7665762, *3 (C.D. Cal. Oct. 9, 2007) ("Class counsel must be monitored by an independent and informed client in order to protect the interests of the class members."). As Judge Vaughn Walker pointedly explained, "[p]ermitting class counsel who are not effectively monitored to prosecute a class action is the functional equivalent of allowing that counsel to serve as both class representative and class attorney." *In re California Micro Devices Sec. Litig.*, 168 F.R.D. 257, 260 (N.D. Cal. 1996).

By serving as the cat's paw for her husband, Dr. Wexler has already demonstrated that she is not up to the task of monitoring class counsel. His withdrawal from the case does nothing to change that. Put simply, if Dr. Wexler was willing to propose an arrangement that constituted an inherent conflict of interest, there is no reason to believe that her ability to monitor class counsel and serve as a fiduciary of the absent class members' interests has dramatically improved in the intervening months. To the contrary, she continues to demonstrate that she is incapable of performing the monitoring function by allowing her husband (and current class counsel) to leave open the possibility of a quantum meruit fee award that would reduce the amount of a class settlement or judgment.

In sum, the withdrawal of Shimshon Wexler from this litigation is insufficient to cure the conflict of interest that existed from the moment the complaint was filed. Because Dr. Wexler retains a financial interest in her husband receiving a quantum meruit payment and because she has shown no ability or willingness to adequately monitor class counsel, she is an inadequate representative as a matter of law.

## CONCLUSION

The Seventh Circuit recently "remind[ed] the class action bar of the importance of insisting that named plaintiffs be genuine fiduciaries, uninfluenced by family ties." *Redman*, 768 F.3d at 638. That admonition should have particular force here, even after Shimshon Wexler's withdrawal from the case. Because Dr. Wexler remains an inadequate class representative, the class allegations in the amended complaint should be stricken.

Sincerely,

Evan M. Tager

## CERTIFICATE OF SERVICE

I, Evan M. Tager, hereby certify that on this 30th day of January, 2017, I caused Defendant AT&T Corp.'s letter brief in support of striking the class allegations to be placed with a commercial courier for overnight delivery to the following, with courtesy copies by email to the same:

James S. Giardina
The Consumer Rights Law Group, PLLC
3104 W Waters Ave
Suite 200
Tampa, FL 33614
Tel.:   813-435-5055
Fax:    866-535-7199
James@ConsumerRightsLawGroup.com

Keith James Keogh
Keogh Law, Ltd.
55 W. Monroe St.
Suite 3390
Chicago, IL 60603
Tel.:   312-726-1092
Fax:    312-726-1093
keith@keoghlaw.com

_____
Evan M. Tager