UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
EVE WEXLER, on behalf of herself and all others : 
similarly situated,                              :
                                                 :
                Plaintiff,           :     **REPORT AND**
                                                 :     **RECOMMENDATION**
           -against-                        :
                                                 :     15-CV-686 (FB)(PK)
AT&T CORP.,                                      :
                                                 :
                Defendant.           :
                                                 :
------------------------------------------------------------- X
**Peggy Kuo, United States Magistrate Judge:**

       Plaintiff Eve Wexler ("Plaintiff") brought this putative class action against Defendant AT&T Corp. ("Defendant"), pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. (*See* Am. Compl., Dkt. 4.) The Honorable Frederic Block has referred Plaintiff's Motion for Leave to File a Second Amended Complaint (the "Motion") to the undersigned for a Report and Recommendation. (*See* Mot. for Leave to File Second Amended Complaint, Dkt. 60; October 9, 2018 Order.) For the reasons stated herein, the undersigned respectfully recommends that the Motion be denied.

## BACKGROUND

       Plaintiff filed the Complaint on February 11, 2015, and the Amended Complaint on March 12, 2015. (Dkt 1, 4.) Both the Complaint and the Amended Complaint were filed by Plaintiff's husband, Shimshon Wexler ("Mr. Wexler"). (*See* Compl. at 11; Am. Compl. at 11.) On March 17, 2015, Attorney James S. Giardina filed a notice of appearance on the docket, joining Mr. Wexler as Plaintiff's attorney of record. (Dkt. 5.)

       On October 28, 2016, Defendant requested a pre-motion conference regarding a proposed motion to strike Plaintiff's class allegations. (Dkt. 39.) Defendant argued that Plaintiff was not an adequate class representative because her husband, Mr. Wexler, was her attorney and, therefore, she

1

had an interest in attorneys' fees. (*Id.* at 1.) In response, on November 9, 2016, Plaintiff filed a letter indicating that Mr. Wexler would withdraw as counsel for Plaintiff and a new firm would join the case. (Dkt. 42.) However, Plaintiff stated that Mr. Wexler "may seek to petition the Court for quantum meruit only for the work done prior to his withdrawal, but in no event will any settlement or resolution have any relationship or be contingent upon any such fees." (*Id.* at 1.) On November 18, 2016, Mr. Wexler filed a Motion to Withdraw as Attorney (Dkt. 44), which was granted on that same day (Nov. 18, 2016 Order). Attorney Keith J. Keogh then appeared *pro hac vice* as incoming counsel (Dkt. 45; *see also* Nov. 22, 2016 Order), joining Mr. Giardina as Plaintiff's lawyers of record.

Judge Block held a pre-motion conference and permitted Defendant to proceed with its motion. (Jan. 13, 2017 Min. Entry.) A fully briefed Motion to Strike Class Allegations was filed on March 24, 2017. (Dkt. 49.) On February 7, 2018, Judge Block granted Defendant's Motion to Strike Class Allegations, finding that, because Plaintiff "ha[d] an interest in a possible fee award to her husband, she [could not] adequately represent the interests of absent class members." (Feb. 7, 2018 Mem. and Order at 7, Dkt. 52 ("Order Striking Class Allegations").)

On April 17, 2018, Plaintiff filed a Status Report indicating that Mr. Wexler agreed to "waive 100% of his attorney fees, has agreed to waive any lien or quantum meruit claim he may have for fees, and will not seek a penny of attorney fees." (Apr. 17, 2018 Status Report ¶ 6, Dkt. 53.) After a pre-motion conference, Judge Block permitted the Motion to proceed, and Plaintiff filed a fully briefed Motion on September 20, 2018, seeking to file a second amended complaint which adds back the class allegations that were stricken by the Order Striking Class Allegations. (*See* Dkt. 60.)

In support of the Motion, Plaintiff argues that leave to amend should be granted in the interest of justice. (Motion at 7-9.) Specifically, she argues that a class action is "the only viable means for Plaintiff and the putative class to litigate their claims against Defendant" because the TCPA only provides for a small damages award and has no fee-shifting provisions. (*Id.* at 7.)

2

Therefore, according to Plaintiff, denial of the Motion would terminate this litigation for all practical purposes. (*Id.* at 8, 9.)

Plaintiff also argues that she should be allowed to file a second amended complaint because the proposed amendment is not futile, Plaintiff did not fail to cure deficiencies in prior amendments or act with undue delay, bad faith or dilatory motive, and Defendant cannot show that it will be prejudiced by the amendment. (*Id.* at 11, 17-18.) Regarding the element of futility, Plaintiff argues, "Now that Attorney Wexler has agreed to waive 100% of his attorney fees, including any lien or *quantum meruit* claim he may have had for fees[,] the potential conflict of interest preventing [Plaintiff] from adequately representing the interest of absent class members is no longer present." (*Id.* at 11 (emphasis in original).)

Defendant raises two main arguments in opposition to Plaintiff's request to amend the Amended Complaint. (Def.'s Opp. to the Motion, Dkt. 60-1.) First, it argues that Plaintiff's Motion is actually an untimely motion for reconsideration of the Order Striking Class Allegations. (*Id.* at 4-6.) Second, Defendant argues that, because Plaintiff cannot meet the adequacy requirement for class certification, the proposed amendment must be denied because it would be futile. (*Id.* at 7.) In the alternative, Defendant asks that the Court permit Defendant to take discovery regarding Plaintiff's adequacy before granting the Motion. (*Id.* at 2.)

An Evidentiary Hearing regarding the Motion was held, at which Plaintiff and Mr. Wexler testified under oath. (*See* Jan. 17, 2019 Min. Entry.)

## DISCUSSION

### A.   Motion for Reconsideration

Defendant argues first that Plaintiff's Motion is actually a motion for reconsideration of the Order Striking Class Allegations. (Def.'s Opp. to the Motion at 4-6.) According to Defendant,

3

reconsideration should be denied because it is untimely and it would "give counsel an undeserved second bite at the apple." (*Id.* at 5-6.)

The undersigned declines to construe the Motion as a request for reconsideration. The Order Striking Class Allegations dealt with the question of whether class allegations should be stricken on the basis that Mr. Wexler was asserting a quantum meruit claim at that time. The issue presented in the Motion is whether, now that Mr. Wexler is no longer claiming any direct interest in fees from this case, amendment should be granted to reinstate the class allegations. *See, e.g., Franco v. Connecticut Life Ins. Co.*, 299 F.R.D. 417, 420 (D.N.J. 2014) (declining to find that a renewed motion for class certification is a motion for reconsideration in disguise because portions of the renewed motion "raise new arguments to address the impediments to class certification.") The legal standard for a motion to strike class allegations is also different from the standard applicable to a motion to amend the complaint. *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 277 F. Supp. 3d 337, 346 (E.D.N.Y. 2017); *see also* Fed. R. Civ. P. 15, 23.

Accordingly, the undersigned will address the merits of the Motion.

**B.    Request to Amend the Complaint**

Requests to amend the complaint are governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that once the period to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 also states that "the court should freely give leave when justice so requires." *See Pinyuk v. CBE Grp., Inc.*, No. 17-cv-5753 (RRM)(CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019) (strong presumption in favor of allowing amendment). The determination of whether to grant or deny leave to amend is within "the sound discretion of the district court." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Leave to amend may be denied for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.*

4

Defendant argues that the Motion should be denied because the proposed amendment is futile. Proposed amendments are futile if they "would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Group*, 783 F.3d 383, 389 (2d Cir. 2015) (quotations omitted). In the context of amendments involving class actions, leave to amend should be denied if "the allegations in the proposed amended complaint, when viewed in the light most favorable to the plaintiff, demonstrate that 'the proposed class *cannot* be certified under Rule 23." *Moukengeschaie*, 277 F. Supp. 3d at 347-48 (emphasis in original) (quotations omitted).

Rule 23(a) sets forth four basic requirements for class certification, which are "numerosity, commonality, typicality, and adequate representation." *Wal-Mart Stores, Inc. v. Duke*s, 564 U.S. 338, 349 (2011). All four elements must be met before class certification can proceed. *See, e.g., In re Barrick Gold Sec. Litig.*, 314 F.R.D. 91, 98 (S.D.N.Y. 2016) ("To be certified, a putative class must first meet all four prerequisites set forth in Rule 23(a). . ."). Here, the adequacy requirement cannot be met.

A plaintiff requesting to represent a class must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[I]t is widely agreed that adequacy is the most important factor to be considered" when addressing requests for class certification. *In re LILCO Securities Litigation*, 111 F.R.D. 663, 672 (E.D.N.Y. 1986) (citations omitted). Class members are bound by an action prosecuted in their absence by the representative party. *See, e.g., Scott v. New York City Dist. Council of Carpenters Pension Plan,* 224 F.R.D. 353 (S.D.N.Y. 2004). Because class members do not, by nature, participate except through the class representative, "the Court's obligation to examine a proposed class representative's adequacy is even more significant in light of the constitutional defect that attaches to the choice of an inadequate class representative." *In re LILCO Securities Litigation,* 111 F.R.D. at 672.

5

"[T]he adequacy requirement is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). One way in which a class representative may have an interest in conflict with that of the class members is through the representative's choice of counsel. Conflicts of interests related to the representative's relationship with counsel are problematic because "when a class representative is closely associated with class counsel, he or she may permit a settlement less favorable to the interests of absent class members." *In re IMAX Securities Litigation*, 272 F.R.D. 138, 155-56 (S.D.N.Y. 2010) (quotations omitted). For example, a business relationship between the class representative and counsel may make a plaintiff more interested in maximizing counsel's recovery in fees than presenting the class' case vigorously. *In re Discovery Zone Sec. Litig.*, 169 F.R.D. 104, 109 (N.D. Ill. 1996). As Judge Block has already observed in this case, while a class representative's duties are "generally nominal," the duty to monitor class counsel is a "significant" one. (Order Striking Class Allegations at 4.) A conflict of interest may affect the representative's ability to carry out that duty. *Id.*

Courts in the Second Circuit are concerned not only with actual conflicts of interest but also with the *appearance* of impropriety and *potential* conflicts of interests. For example, in *In re IMAX Securities Litigation*, 272 F.R.D. at 157, faced with a "concern about the appearance of impropriety," the court denied class certification "to eliminate any possible conflict between the class representative and the class." The court added that the "possibility of inadequacy and the appearance of impropriety are sufficient for [the court] to deny certification of a class with [the plaintiff] as its representative." *Id.* Similarly, in *Hale v. Citibank, N.A.,* 198 F.R.D. 606, 607 (S.D.N.Y. 2001), the court denied class certification where the proposed class representative's husband, an attorney, had referred multiple cases to class counsel, and class counsel represented the

6

class representative, her husband and other family members in other litigation. There was an expectation in that case that, upon conclusion of the litigation, the husband "might be recognized for [his] contribution to the cases." (*Id.* (quotations omitted).) The court explained that this arrangement would "inevitably cause [the plaintiff] to confuse her fiduciary duty to the prospective class with her interest in protecting and advancing her husband's contingent financial relationship with [counsel]." *Id.*

Courts have found that "[a] 'potential conflict of interest' is sufficient to render a named plaintiff an inadequate class representative." *Aliano v. CVS Pharmacy, Inc.*, 16-cv-2624 (FB) (SMG), 2018 WL 3625336, *6 (E.D.N.Y. May 21, 2018). The court's role in assessing adequacy is "not to discern whether the class representative-class counsel relationship creates an actual conflict, but rather to assess the likelihood that a conflict of interest may exist." *In re Discovery Zone Sec. Litig.*, 169 F.R.D. at 109.

Mr. Wexler has now renounced any claim for fees, but Plaintiff still cannot adequately represent the class because potential conflicts of interest and an appearance of impropriety persist.

During the Evidentiary Hearing, Mr. Wexler testified that he has represented clients either simultaneously or consecutively with Mr. Keogh and Mr. Giardina. (Transcript at 61-63, Dkt. 72-1.) Specifically, Mr. Wexler represented a client at the trial stage and Mr. Keogh "helped" at some point during the appellate stage. (*Id.* at 61.) In another case, Mr. Keogh substituted for Mr. Wexler as counsel after the latter's withdrawal. (*Id.* at 61-62.) Mr. Wexler also worked with Mr. Giardina on at least two cases, dividing attorneys' fees in one of them. (*Id.* at 62.) These facts show that Mr. Wexler has had multiple business dealings with class counsel. The possibility of Plaintiff's husband deriving financial gain from work done with class counsel creates the appearance that Plaintiff would have an incentive to maximize fees for her attorneys or refrain from contesting counsel's request for fees. *See, e.g., Hale*, 198 F.R.D. at 607; *In re Discovery Zone Sec. Litig.*, 169 F.R.D. at 108.

7

The close business dealings between Mr. Wexler and class counsel, and the conflicting interest they present to Plaintiff, are evident in other ways.

After the Complaint was filed (but before the Amended Complaint), Plaintiff executed a retainer agreement, dated March 2, 2015 ("2015 Retainer Agreement"), providing that she "retains and authorizes Keogh Law, Ltd., Law Office of Scott D. Owens, Esq., and The Consumer Rights Law Group, PLLC" to "investigate potential claims and defenses" against Defendant concerning violations of the TCPA and this case. (Transcript, Ex. 1("2015 Retainer Agreement") at 1.) The Consumer Rights Law Group, PLLC is Mr. Giardina's law firm. (*Id.* at 5.) The 2015 Retainer Agreement states that any recovery for fees and costs would be split as follows: Keogh Law, Ltd. would receive 40%, the Law Office of Scott D. Owens, Esq. would receive 30%, and The Consumer Rights Law Group, PLLC would receive 30%. (*Id.* at 3.) Only Mr. Giardina and Mr. Owens signed the 2015 Retainer Agreement; Mr. Keogh did not, although a space for his signature was included on the last page. (*Id.* at 5.) The 2015 Retainer Agreement does not reference Mr. Wexler's role, notwithstanding that he had already filed the Complaint, and shortly thereafter, would also file the Amended Complaint.

Plaintiff executed a second retainer agreement, dated January 8, 2016 ("2016 Retainer Agreement"), indicating that she retains Keogh Law, Ltd. and The Consumer Rights Law Group, PLLC as her counsel. (Transcript, Ex. 2 ("2016 Retainer Agreement") at 1.) According to this document, Keogh Law, Ltd. and The Consumer Rights Law Group would each receive 50% of any recovery for fees and costs, but "The Law Offices of Shimshon Wexler, PC. may seek to petition the Court for quantum merit [sic] for the work done prior to its withdrawal, but in no event will any settlement or resolution have any relationship or be contingent upon any such fees." (*Id.* at 8.) Both Mr. Keogh and Mr. Giardina signed the 2016 Retainer Agreement. (*Id.* at 10.)

8

Plaintiff testified that Mr. Keogh did not sign the 2015 Retainer Agreement because he decided not to be involved in the case until a motion to compel arbitration filed by Defendant in 2015 was resolved. (Transcript at 10.) However, Mr. Owens, who also decided not to represent Plaintiff and the class until resolution of the arbitration issue, did sign that agreement. (*Id.* at 11.) Despite these two attorneys choosing not to represent Plaintiff at that point, the agreement – signed by Plaintiff – already provided for them to receive 40% and 30%, respectively, of any recovery for fees and costs. (2015 Retainer Agreement at 3.) Plaintiff testified that she never questioned why Mr. Keogh was eligible to receive 40% of any attorneys' fees award under the 2015 Retainer Agreement, even though he was not acting as her counsel at the time. (Transcript at 20.) The fact that Plaintiff would agree to give an interest in attorneys' fees to someone who specifically declined to act as her counsel creates the appearance that Plaintiff had a conflict of interest, such that she would act to benefit those with financial dealings with her husband over members of the class.

Moreover, Plaintiff entered into the 2015 Retainer Agreement with Mr. Giardina and Mr. Owens on March 2, 2015, but when the Amended Complaint was filed on March 12, 2015, it was filed and signed solely by Mr. Wexler. (Am. Compl. at 11.) The court docket shows that Mr. Wexler began representing Plaintiff since at least February 11, 2015 (when the original Complaint was filed) and continued to do so until November 18, 2016. However, the 2015 Retainer Agreement does not mention Mr. Wexler <u>at all</u>. (*See* 2015 Retainer Agreement.) Plaintiff did not sign any engagement letter with her husband or negotiate a fee agreement with him. (Transcript at 33.) There is no indication of how he was to be paid. This informational gap creates an appearance that Mr. Wexler had a spoken or unspoken side agreement with Mr. Giardina and Mr. Keogh. Mr. Wexler testified that he expected to get a "reasonable amount" of fees, but that he was not included in the 2015 Retainer Agreement because "it would raise more problems than it would solve" in light of the potential adequacy issues. (*Id.* 84-85.) Mr Wexler was "hoping" that the other attorneys "would be

9

fair" and allow him to request fees from the Court. (*Id.* at 85.) Under the circumstances, hoping someone would be fair in sharing fees creates an incentive to curry favor. *See, e.g., Hale,* 198 F.R.D. at 607. And by placing such trust in Mr. Giardina and Mr. Keogh, Mr. Wexler makes clear his – and by extension, Plaintiff's – close financial relationship with them.

Plaintiff did not question where Mr. Wexler's fees would come from or ask why 100% of the fees were divided among other attorneys, some of whom did not represent her. (*Id.* at 37-38.) Plaintiff's reticence in the matter of attorney's fees is consistent with the fact that the lawsuit was apparently Mr. Wexler's brainchild, not Plaintiff's. She did not ask Mr. Wexler to represent her in this case; he was the one who proposed filing this action and representing her. (*Id.* at 25.) She "do[es] not recall" discussing with her husband that she would be suing as a class representative (*id.*), and she never discussed with him the potential conflicts of interest that could arise from his representation of her and the class (*id.* at 30). She also did not seek independent advice on that issue. (*Id.*) Even though the 2015 Retainer Agreement and the quantum meruit aspect of the 2016 Retainer Agreement are no longer in effect, these facts cast doubt on Plaintiff's ability to monitor class counsel.

Finally, the process of retaining Mr. Keogh as counsel highlights Plaintiff's complete detachment from important decisions in the case and willingness to allow her husband's business associates to gain financially from the lawsuit. Plaintiff testified that Mr. Keogh joined the case after Mr. Giardina told her that Mr. Keogh was interested in the case. (*Id.* at 46.) Plaintiff never met with Mr. Keogh and did not recall speaking to him on the phone before retaining him as counsel. (*Id.*) She did not know first-hand whether Mr. Keogh was a good attorney, she did not know him as counsel, and she did not ask about his prior relationship with her husband. (*Id.*) Although the 2015 Retainer Agreement provides that the attorneys' fees are "negotiable between Attorneys and Client" (2015 Retainer Agreement at 2), Plaintiff did not negotiate the proposed fees (Transcript at 23-24).

10

And, before Mr. Keogh even signed a retainer agreement with her, Plaintiff had already agreed to give him a 40% share of any recovery for attorneys' fees.

In light of Mr. Wexler's close business relationships with Plaintiff's current counsel, along with Plaintiff's actions and inactions, the undersigned finds that a conflict of interest is apparent between Plaintiff and class counsel, such that divided loyalties impede her from monitoring counsel in this action. Because Plaintiff is not an adequate class representative, the proposed class cannot be certified under Rule 23, and the proposed amendment would be futile.[1]

## CONCLUSION

Based on the foregoing, the undersigned respectfully recommends that the Motion for Leave to File an Amended Complaint be denied. Any written objections to this Report and Recommendation must be filed within 14 days of service of this report. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal any order or judgment entered based on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated: Brooklyn, New York
August 5, 2019

---

[1] In the absence of adequacy, there is no need to analyze the other three requirements for certification of a class action.

11