**THE CONSUMER RIGHTS LAW GROUP, PLLC**
James S. Giardina, Esq.
3104 W. Waters Avenue, Suite 200
Tampa, FL 33614
Telephone: (813) 435-5055

**KEOGH LAW LTD.**
Keith J. Keogh, Esq.
55 W. Monroe, Suite 3390
Chicago, IL 60603
Telephone: (312) 726-1092

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

**EVE WEXLER**, an individual
on behalf of herself and all others
similarly situated,

                Plaintiff,

v.                                         Case:  1:15-cv-00686-FB-PK

**AT&T CORP.**,

                Defendant.
_____/

### PLAINTIFF'S OBJECTION TO REPORT & RECOMMENDATION

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

I.      Standard of Review ................................................................................................6

II.     The R&R Does Not Decide the Issue Referred to the Magistrate – Instead It Decides a Class Certification Issue that Was Not Referred, Employing a Standard that Does Not Apply to Plaintiff's Motion, and Violating the Magistrate's Act. .............................................................6

III.    Even if Plaintiff's and Her Counsel's Adequacy Were at Issue on this Motion, the R&R Identified No Basis to Find Them Inadequate -- the R&R Relies on Non-Existent Facts and Employs the Wrong Standard.....................................................................................................9

A.      There Is No Conflict Between Dr. Wexler or Her Husband, and Attorney Keogh. .....9

B.      The R&R Applied the Wrong Standard to Evaluate Dr. Wexler's and Her Counsel's Adequacy – Applying the Correct Standard Demonstrates Dr. Wexler and Her Counsel Are Adequate Representatives. ........................................................................................................14

CONCLUSION................................................................................................................17

**Table of Authorities**

## Cases

*Altman v. White House Black Market, Inc*
  2017 U.S. Dist. LEXIS 221939, *27 (N.D. Ga. Oct. 25, 2017) .............................15
*Baffa v. Donaldson*, 222 F.3d 52 (2d. Cir. 2000) ......................................................14
*Blatch v. Franco*, 2002 U.S. Dist. LEXIS 3531 (S.D.N.Y. Feb. 4, 2002) ......................9
*China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018)..................................................3
*Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d. Cir. 2006)......................................14
*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*
  657 F.2d 890 (7th Cir. 1981) .........................................................................5
*Eisen v. Carlisle & Jacquelin and DeCoppet & Doremus*, 370 F.2d 119 (2nd Cir. 1966)............1
*Fendi Adele S.R.I. v. Ashley Reed Trading, Inc.*
  2011 U.S. Dist. LEXIS *6-7 (S.D.N.Y. June 30, 2011)......................................9
*Fischer v. Int'l Tel & Telp. Corp.*, 72 F.R.D. 170 (E.D.N.Y. 1976).........................16
*Foman v. Davis*, 371 U.S. 178 (1962).........................................................................7
*Hale v. Citibank, N.A.*, 198 F.R.D. 606 (S.D.N.Y. 2001) .......................................13
*IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland*
  *Group*, 783 F.3d 383 (2d Cir. 2015) ...........................................................6
*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297 (E.D. Mich. 2001) ....................15
*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir. 2019) .............................2
*Lewis v. Goldsmith*, 95 F.R.D. 15 (D.N.J. 1982).....................................................16
*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160 (2d Cir. 2015).............7
*Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*
  277 F. Supp. 3d 337 (E.D.N.Y. 2017)......................................................7, 8
*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) .............................2
*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) ........................1
*Steinberg v. Natinwide Mut. Ins. Co.*, 224 F.R.D. 67 (E.D.N.Y. 2004)........................16
*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363 (1966) ..............................................14
*United States v. Romano*, 794 F.3d 317 (2d. Cir. 2015).............................................6
*Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 280 F.3d 124 (2d. Cir. 2001).....................15
*Winthrop House Ass'n v. Brookside Elm Limited Partners*
  451 F. Supp. 2d 336 (D. Conn. 2005) ...........................................................9

## Other Authorities

Federal Magistrate's Act, 28 U.S.C. §636(b)(1)...........................................................4

## INTRODUCTION

AT&T does not dispute that it repeatedly robocalled Dr. Wexler's cell phone regarding an account that is not hers, that it gave her no means to stop the calls, or that it subjected hundreds or thousands of other people to this same practice, even though this conduct is prohibited by the TCPA. AT&T also does not dispute that Dr. Wexler's class allegations are both proper and adequate on their face, and that adding them now would not cause AT&T *any* prejudice. Indeed, AT&T admitted in its opposition to the motion to amend that it has "nothing to do with the contents of the second amended complaint." [Resp. at pp.11-12].

Instead, AT&T seeks to thwart Congress's intent,[1] and preemptively avoid a class action regardless of its merit – even though it is undisputed that a class action is the only feasible way for plaintiff and the class members to recover.

As recognized long ago by the Second Circuit, denying the right to bring class allegations should not be taken lightly where the individual's damages are too small to warrant continuing litigation on an individual basis. *Eisen v. Carlisle & Jacquelin and DeCoppet & Doremus*, 370 F.2d 119, 120-21 (2nd Cir. 1966). "We can safely assume that no lawyer of competence is going to undertake this complex and costly case to recover $70 for Mr. Eisen…. Dismissal of the class action in the present case, however, will irreparably harm Eisen and all others similarly situated, for, as we have already noted, it will for all practical purposes terminate the litigation." *Eisen v. Carlisle & Jacquelin and DeCoppet & Doremus*, 370 F.2d 119, 120 (2nd Cir. 1966).

---

[1] AT&T's practice of shifting its burden of compliance on to consumers, and blaming the technology it implemented to save it from paying humans to make the calls, has been aptly summarized by the Seventh Circuit: "[a]n automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance" because, unlike a human caller who would realize, for example, if he or she called a wrong number, "predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-39 (7th Cir. 2012).

Similarly, the Fourth Circuit recently reiterated the importance of the class mechanism in TCPA actions:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019); *see also id.* at 663; *accord Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) ("Given the large number of purported members in this suit and the similarity of their claims, disposition by class action is an efficient use of judicial resources. Moreover, the relatively small potential recovery in individual actions . . . and reduced likelihood that plaintiffs will bring suit also weighs in favor of class resolution.").

Here, Dr. Wexler's and the putative class's claims are too small to pursue individually but are large when taken as a group. If this Court denies Dr. Wexler leave to reinstate the class allegations, Dr. Wexler and the class will not be given the opportunity to litigate their claims and AT&T will avoid liability for its wrongdoing.

This is even more apparent where, as here, the statute of limitations has run or is about to run on many of the class claims as many of the calls were in 2014[2].   In *China Agritech, Inc. v. Resh*, the Supreme Court held the statute of limitations is not equitably tolled under the *American Pipe* tolling doctrine for subsequent class actions such that no class member can bring another class against AT&T for any expired claims except as part of a class in this lawsuit.  138 S. Ct.

---

[2] The TCPA has a four year statute of limitations.

1800, 1802 (2018).  As such, denying leave to amend is equivalent to awarding judgment in AT&T's favor against the class.

The record in this case demonstrates that leave to amend should be granted.  Shortly after filing the case, Ms. Wexler sought to have her attorney who filed this case, also her husband, withdraw and be replaced by nationally recognized class action attorneys who focus on TCPA actions like this one.  In fact, Mr. Keogh not only has some of the largest class recoveries under the TCPA, he has achieved great success against AT&T in *Hageman v AT&T,* where he recovered 45 million dollars for a class of just 16,000 victims of on of AT&T's robocall campaigns.  As the report and recommendation ("R&R") recognizes, Mr. Keogh declined to appear on Mrs. Wexler's behalf in this case until after Defendant's motion to compel arbitration was decided.  It was not until then that Ms. Wexler retained Keogh Law and Mr. Wexler withdrew from the case.

The sole issue referred by this Court to the Magistrate was whether Dr. Wexler should be granted leave to amend to add class allegations under Federal Rule 15.[3]  Yet, the R&R addressed a different issue than the one the Court referred, it employed the wrong standards, and it reached the wrong outcome based on non-existent facts. It should be overruled.

The R&R correctly observed this issue must be decided based exclusively on the *allegations* in the proposed amended complaint [ECF No. 74 at 5] but, instead of doing so, the Magistrate conducted an evidentiary hearing on the *merits* of Plaintiff's ability to meet adequacy

---

[3] Dr. Wexler moved to file a second amended complaint reasserting her class allegations after the potential conflict that had prompted the Court to grant AT&T's motion to strike those allegations earlier, *i.e.*, Dr. Wexler's attorney husband planned to seek fees for the work he performed in this case prior to withdrawing as her counsel, was eliminated by her husband filing a statement agreeing he would not receive any fees. [ECF No. 74 at ___]. The R&R correctly rejected AT&T's claim that Plaintiff sought "reconsideration" of the decision to strike the class allegations, as the grounds for that decision (*i.e.* Dr. Wexler's attorney husband's plan to seek a fee) no longer existed. [*Id.* at 2].

of representation standards under Federal Rule 23(a)(4) – even though no Rule 23 motion is pending – and then only addressed that issue in the R&R. [ECF No. 74 at 5-6 (discussing Rule 23(a)(4)'s adequacy requirement at length, and the standards for it)]. Thus the R&R's conclusion that Plaintiff's motion to amend should be denied is based on consideration of the wrong issue using the wrong standard, and goes beyond the scope of the referral in violation of the Federal Magistrate's Act, 28 U.S.C. §636(b)(1). For these reasons alone it should be rejected.

Moreover, the R&R reached its conclusion by relying on non-existent facts. The R&R recommends finding Plaintiff's proposed class counsel (Keith Keogh) is conflicted because of "close business dealings" with Plaintiff's attorney husband (whose prior involvement in the case resulted in the class allegations being stricken), when in fact there are no such dealings. Instead, the testimony was clear that the only dealings Mr. Keogh ever had with Plaintiff's husband was to take over two cases *after* Mr. Wexler withdrew (both of which were contingent upon a retainer agreement that the plaintiffs signed explicitly providing there would be no fee sharing with Mr. Wexler. The only other matter was an appeal where the underlying claim was brought under FACTA where Mr. Keogh agreed to assist in the appeal of a case that Mr. Wexler lost, as it was a matter of first impression and within Mr. Keogh's significant experience in that area of law. The testimony was also clear that Mr. Keogh has never shared a fee with Mr. Wexler in any case and has no agreement to do so.

Likewise, the R&R recommends finding Plaintiff inadequate because she "agreed" to give Mr. Keogh 40% of any attorneys' fees awarded in the case even though he did not represent her. This reasoning misunderstands the chronology of the agreement. That finding is based on a draft *proposed* representation agreement that was never executed because Mr. Keogh's TCPA class action experience would not be needed unless AT&T's pending motion to thwart a class

action by compelling arbitration was defeated. Plaintiff was simply the first to sign the draft before she knew Mr. Keogh would not get involved in the case at that time. In other words, Mr. Keogh was not entitled to any fee until actually entering into an agreement providing he would represent Ms. Wexler and Mr. Wexler would withdraw and not be entitled to any fee sharing.

The actual facts demonstrate no conflict and, applying the correct standard for evaluating adequacy, both Dr. Wexler and her counsel easily qualify. Further, the facts demonstrate that Dr. Wexler properly attempted to replace Mr. Wexler early in the case, but instead of that being a point in her favor, it is being used to punish her and the class. Accordingly, had the issue of adequacy actually been before the Magistrate, the R&R should have readily found in her favor.

To be sure, denying Dr. Wexler leave to plead class allegations based on a premature determination of class issues using incorrect assumptions is contrary to justice and does not protect this class[4]. As noted above, without a class action, the class members cannot assert their claims because the TCPA only provides for a small damages award, it has no fee-shifting provision and, at this point, class members would be time-barred from filing their own lawsuits. In any event, Plaintiff's adequacy should be determined based on the actual facts and correct standard as part of a class motion designed to address that issue under Federal Rule 23, not on a motion for leave to file an amended complaint under Federal Rule 15. The R&R should be overruled, and Ms. Wexler's motion for leave to amend granted.

---

[4] AT&T's argument is the classic fox guarding the hen house argument. *See Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) ("[I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class," or the plaintiffs' ability to finance the litigation, it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.")

## I.     Standard of Review

Those portions of the Magistrate's R&R that Dr. Wexler objects to must be reviewed *de novo*. *United States v. Romano*, 794 F.3d 317, 340 (2d. Cir. 2015) ("If a party timely objects to any portion of a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'") (quoting 28 U.S.C. §636(b)(1)). Any parts not objected to must be reviewed for clear error.

## II.    The R&R Does Not Decide the Issue Referred to the Magistrate – Instead It Decides a Class Certification Issue that Was Not Referred, Employing a Standard that Does Not Apply to Plaintiff's Motion, and Violating the Magistrate's Act.

After Dr. Wexler's husband/former counsel eliminated the issue that prompted the Court to strike her class allegations by waiving any claim to receive fees under quantum merit that he might have had, Dr. Wexler sought leave to file a second amended complaint reasserting the class allegations under Federal Rule 15. [ECF No. 74 at 2]. AT&T opposed the motion, arguing the amendment would be futile, and Dr. Wexler filed a reply to show the amendment is not futile. [ECF No. 60 (Combined Briefing)]. The Court referred the motion to the Magistrate, and the Magistrate conducted a hearing and wrote a Report and Recommendation. [ECF No. 74 at 1].

The R&R correctly observes that whether Dr. Wexler's class allegations are futile must be decided based on the sufficiency of the allegations themselves, employing a Rule 12(b)(6) standard. [*See id.* at 5 (quoting *IBEW Local Union No. 58 Pension Trust Fund and Annuity Fund v. Royal Bank of Scotland Group*, 783 F.3d 383, 389 (2d Cir. 2015) ("Proposed amendments are futile if they 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'"))]. Specifically:

> In the context of amendments involving class actions, leave to amend [only] should be denied if "<u>the allegations in the proposed amended complaint, when</u>

> viewed in the light most favorable to the plaintiff, demonstrate that 'the proposed class cannot be certified under Rule 23."

[*Id.* (citing *Moukengeschaie v. Eltman, Eltman & Cooper, P.C.*, 277 F. Supp. 3d 337, 346 (E.D.N.Y. 2017) (underscore and brackets added))].

There is no dispute that Plaintiff's class allegations are sufficient on their face. Indeed, AT&T did not challenge the sufficiency of the allegations themselves, and the R&R finds no fault with them. Thus, the R&R should have recommended leave to amend be granted.

However, the R&R does not address that issue. Instead of evaluating whether the class allegations are adequately pled using a Rule 12(b)(6) standard, and construing them in the light most favorable to Plaintiff, the Magistrate held an evidentiary hearing about the *merits* of Plaintiff's alleged ability to meet adequacy of representation standards under Federal Rule 23(a)(4), and recommends Plaintiff's motion to amend be denied based on the Magistrate's views on that issue. [ECF No. 74 at 3 and 5]. Thus, the R&R addresses the wrong question.

This is highly prejudicial. Dr. Wexler's motion was simply one to amend her complaint under Federal Rule 15, which, as shown, is governed by a permissive, lenient standard. *See Foman v. Davis*, 371 U.S. 178, 181-182 (1962) (leave to amend should be "freely given" as justice requires to "facilitate a proper decision on the merits."); *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting the "the 'permissive standard' of Rule 15"). As a result, her motion only endeavored to demonstrate the second amended complaint satisfied that standard, and the R&R should have exclusively employed that standard to address the issue. Instead, by addressing whether Dr. Wexler and her counsel satisfy the adequacy standards governing Federal Rule 23(a)(4), the R&R subjects Dr. Wexler's motion to a standard it was neither designed nor obligated to address, and is much more difficult to meet.

The R&R also shifts the burden from defendant (to prove "futility") to plaintiff (to prove "adequacy"), as the case law the R&R itself relies on shows:

> [D]ifferent standards apply when analyzing whether the requirements for amending a pleading have been met under Rule 15(a) and whether the requirements of Rule 23 have been met in order to certify a class. "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011). Rather, the party seeking class certification under Rule 23 must "affirmatively demonstrate" that the requirements of the Rule have been met. Id.; see also Massey v. On-Site Manager, Inc., 285 F.R.D. 239, 244 (E.D.N.Y. 2012) (holding that in certifying a class, the court must perform a "rigorous analysis" but that "[d]espite this Court's obligation to carefully analyze each prong of Rule 23 before granting class certification, [t]he Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction") (citation and quotations marks omitted). When presented with a motion to certify a class, the Court must determine whether plaintiff has met her burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met. See Butto v. Collecto Inc., 290 F.R.D. 372, 380 (E.D.N.Y. 2013) (quoting Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010)).
>
> By contrast, a court confronted with a motion to dismiss considers whether the plaintiff has alleged sufficient facts to state a plausible claim on its face, Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). In determining whether an amendment to a pleading would be futile, the court applies the same standard, accepting as true the facts alleged by the moving party. Konrad v. Epley, No. 12 CV 4021, 2013 U.S. Dist. LEXIS 169091, 2013 WL 6200009, at *20 (E.D.N.Y. Nov. 25, 2013), aff'd, 586 F. App'x 72 (2d Cir. 2014). The defendants bear the burden, as the parties opposing amendment, "of establishing that an amendment would be futile." Gurrieri v. County of Nassau, No. 16 CV 6983, 2017 U.S. Dist. LEXIS 126293, 2017 WL 3432208, at *3 (E.D.N.Y. Aug. 9, 2017).

*Moukengeschaie*, 277 F. Supp. 3d at 346-347. Indeed, the R&R expressly acknowledges class-related issues are governed by a different standard than a motion to amend the complaint. [ECF No. 74 at 4 (citing *Moukengeschaie*, 277 F. Supp. 3d at 346)]. Accordingly, because the R&R recommends denial of Plaintiff's motion based on the evaluation of an issue the motion does not raise using a standard that does not apply, when it is undisputed Plaintiff's class allegations are sufficient on their face, the R&R should be rejected as contrary to law.

For these same reasons, the R&R violates the Federal Magistrate's Act, which requires this Court to consider class certification issues absent a referral to the Magistrate. *See Blatch v. Franco*, 2002 U.S. Dist. LEXIS 3531, *2, fn.1 (S.D.N.Y. Feb. 4, 2002) ("28 U.S.C. section 636(b)(1)(A) excepts class certification issues from the non-dispositive matters over which a Magistrate Judge can exercise plenary authority."). The Court only referred Plaintiffs' motion to amend her complaint, not a motion to decide class issues. Accordingly, the R&R also should be rejected for going beyond the scope of the referral. *Fendi Adele S.R.I. v. Ashley Reed Trading, Inc.*, 2011 U.S. Dist. LEXIS *6-7 (S.D.N.Y. June 30, 2011) ("Because issues [decided by the magistrate judge] were beyond the scope of the referral, [the district court] decline[d] to adopt the recommendations as to these issues in their entirety.") (quoting *Winthrop House Ass'n v. Brookside Elm Limited Partners*, 451 F. Supp. 2d 336, 348 (D. Conn. 2005)).

III. **Even if Plaintiff's and Her Counsel's Adequacy Were at Issue on this Motion, the R&R Identified No Basis to Find Them Inadequate -- the R&R Relies on Non-Existent Facts and Employs the Wrong Standard.**

A. **There Is No Conflict Between Dr. Wexler or Her Husband, and Attorney Keogh.**

In addition to addressing the wrong issue, the R&R reaches the wrong conclusion on that issue by relying on non-existent facts to find the "appearance" of conflicts that simply do not and cannot exist. The R&R agreed the conflict that prompted this Court to strike the prior class allegations had been eliminated when Dr. Wexler's husband/former attorney agreed to not seek or receive any fee in this matter. [ECF No. 74 at 4]. Nevertheless, the R&R opines a different "conflicting interest" exists despite Dr. Wexler's husband's withdrawal,[5] because allegedly Dr. Wexler's husband and her other counsel have "close business dealings." [ECF No. 74 at 8].

_____

[5] Dr. Wexler has another attorney, James Giardina, who appeared shortly after it was filed in March 2015. [ECF No. 74 at 1]. Mr. Keogh did not appear until November 22, 2016. [*Id.* at 2].

That is flat wrong. Mr. Keogh has no close dealings with Mr. Wexler. The only involvement they have ever had was when Mr. Keogh took over *Altman v. White House Black Market, Inc* and this case *after* Mr. Wexler withdrew and only when the retainer agreement explicitly provided that there would be no fee sharing as well as to assist in an appeal after Mr. Wexler lost the case in a single case (along with another lawyer) in *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114 (2d Cir. 2017), nearly two years ago. At that time. Mr. Keogh had cases pending nationwide on the issue in *Katz* and any adverse ruling would impact millions of class members. *See Flaum v Doctors Associates,* 16-CV-61198-CMA (S.D. Fla.) ($30.9 million dollars) and *Muransky v. Godiva Chocolatier*, Inc., 15-cv-60716-WPD (S.D. Fla., filed Apr. 6, 2015) ($6.3 million dollars)(on appeal).[6]

To be clear, Mr. Keogh and his firm have never shared fees in any case with Mr. Wexler, and there is no side deal to pay him or anybody any fees in this case. [*See* ECF No. 72-1 at 16, and 85 ("There was no side agreement."); and see Exhibit 1 (Keogh Declaration) at ¶8, attached].[7] Indeed, AT&T did not even contend there was any such deal. [ECF No. 60-1 (AT&T Resp. Br.) at 12 ("[AT&T] is not suggesting that there is any kind of *quid pro quo* …") (underscore and brackets added)]. Thus, there is no basis to claim any "conflicting interest" between Mr. Keogh and Mr. Wexler or Dr. Wexler, let alone the "possibility of Plaintiff's

---

[6] Mr. Keogh and his firm are often asked to assist in appeals that involves issues that impact consumer cases. For example, they have just been asked to assist in an appeal brought by a pro se consumer to insure that the legal arguments are adequately presented to insure consumer interests are protected. *Ex.1* at ¶11 Sometimes they end up being retained, like in *Katz*, or other times they assist the Amicus. *Id.* at 12.

[7] The R&R notes "Mr. Keogh substituted for Mr. Wexler as counsel after the latter's withdrawal." [ECF No. 74 at 7]. That was the *Altman* case discussed below – a case in which, like here, Mr. Keogh and Mr. Wexler were not co-counsel, and had no agreement, understanding, or other arrangement. [Exhibit 1 (Keogh Declaration) at ¶10]. Instead that retainer, like here, provides that Mr. Wexler will not sharing in any fees. *Id.*

husband deriving financial gain from work done with class counsel" that the R&R suggests. [ECF No. 74 at 7].[8]

The R&R also recommends finding Plaintiff inadequate because she "agreed" to give Mr. Keogh 40% of any attorneys' fees awarded in the case even though he did not represent her. There was no such agreement. Plaintiff was simply the first to sign a *proposed* representation agreement among Plaintiff, Mr. Keogh and several other lawyers that was never executed because Mr. Keogh and another lawyer (Scott Owens) – who were being hired for their class action experience – subsequently determined they should not get involved unless and until AT&T's then-pending motion to avoid a class action by compelling individual arbitration was defeated. As Dr. Wexler explained:

> Q. And you say original agreement. If you'd turn to the last page can you tell me when it was signed?
> A. March 2015.
> Q. Okay. And you see for my firm, myself, it's not signed, right?
> A. Um-hum.
> Q. Do you know why that is?
> A. My understanding is that this was the first agreement and that because Shimshon was part of the original case, as well as the arbitration that was pending, whether this would be an arbitrated case or not, that you decided not to be involved in the case at that point.
>
> * * *
>
> Q. Okay. And we know [from] a moment ago that my firm did not decide to represent you at that time, correct? What about Scott Owens' firm since he signed this?
> A. I believe he also because of the arbitration clause that there was a fear that this case was going to be settled under the arbitration agreement that he did not want to be involved in the case.
> Q. Okay. So -- all right. Is it true that because my firm and Mr. Owens [did] not get involved Shimshon continued to represent you?

---

[8] The R&R also notes that Dr. Wexler's other attorney, James Giardina, has worked with Mr. Wexler "on at least two cases," and divided fees with him in one case [ECF No. 74 at 7], but this <u>past</u> involvement was more than five years ago (*Wesley v Dynamic Recovery Solutions, LLC*, No. 3:14-CV-486-GLS-DEP (E.D.N.Y. filed Apr. 28, 2014). They have no current cases and sharing fees five years ago does not identify a <u>present</u> conflict.

> A. Yes. So Shimshon and Mr. Giardina together fought the arbitration clause.
> Q. Okay. And they won, right?
> A. They did.

[ECF No. 72-1 (Corrected Hearing Transcript) at 10-11 (bracketed matter reflects corrections submitted by AT&T)]. At the time Dr. Wexler signed the agreement, she thought Mr. Keogh was going to sign it. [ECF No. 72-1 at 21 ("Well, he -- he didn't sign it after I did sign it, so when I signed it, he was -- I thought that he was also going to be signing the agreement."). In other words, Dr. Wexler did not "agree" to give fees to lawyers that did not represent her as the R&R suggests – she simply signed a *proposed* agreement to hire new counsel that was never in effect because the attorneys had not yet entered the case at that point. [ECF No. 72-1 at 65 ("A. … this was a proposed agreement. He never signed this agreement. So this was something that was contemplated about being signed by it never was actually signed and therefore not an agreement.")].

The R&R goes on to opine that the non-existent facts in conflict with the actual testimony set out above create the "appearance" of a "side deal" between Dr. Wexler's husband and Mr. Keogh because <u>before</u> Mr. Keogh appeared in the case in November 2016, Dr. Wexler did not discuss an attorneys' fee arrangement with her husband or sign an engagement letter. [ECF No. 74 at 9 (citing ECF No. 72-1 at 33)]. In addition to being based on non-facts, this is a non-sequitur. The absence of a fee discussion or engagement agreement between Dr. Wexler and her husband before Mr. Keogh's involvement, during the time of the undisputed facts shows Mr. Keogh *declined* to get involved because of AT&T's pending arbitration motion, and in no way suggests any side deal between Dr. Wexler's husband and Mr. Keogh. At most, it shows Dr. Wexler's husband (who has now withdrawn) simply neglected to have his spouse sign a

representation agreement when he initially filed the lawsuit. At any rate, as shown above, there was no deal (side or otherwise) between Mr. Wexler and Mr. Keogh.

The R&R also cites testimony from Dr. Wexler's husband, who said he previously "was 'hoping' the other attorneys would be fair' and allow him to request fees from the Court." [ECF No. 74 at 9-10]. Regardless, his "hopes" to simply seek fees from the Court do not relate to any side deal. Further, any such hope cannot create a conflict with Mr. Keogh (again, they never had any deal), plus Mr. Wexler subsequently abandoned those hopes when he expressly waived any claim to a fee in the case. [ECF No. 74 at 2]. Indeed, Mr. Wexler acknowledged his hopes were meaningless because, when the Magistrate specifically asked him if the other attorneys agreed to refrain from opposing a request for fees from the Court if he made one, he testified "there was no agreement that they wouldn't oppose." [ECF No. 72-1 at 87]. At the end of the day, the testimony is unrefuted - there was no side deal and the consistent lack of any evidence cannot possibly form the basis to hold there was an appearance of a side deal.

The *Hale* case the cited by the R&R does not present a basis to find any conflict on these facts. In that case, the plaintiff's husband continued to maintain an *actual* contingent interest in the fee award due to his *actual* close relationship with the plaintiff's counsel, having referred seven class actions to the firm, including cases in which he, or his wife, or his mother or father were named plaintiffs. *Hale v. Citibank, N.A.*, 198 F.R.D. 606, 607 (S.D.N.Y. 2001). By contrast, there is zero relationship between Mr. Wexler and Mr. Keogh.

Finally, the R&R criticizes Dr. Wexler's inability to recall specifically discussing the class aspects of the case with her husband before the lawsuit was filed (four years ago – which would tax anyone's memory), the fact that her husband suggested she file the suit instead of coming up with the idea on her own (which would not be unusual for one's lawyer spouse to do

– although it must be noted Dr. Wexler herself identified the violations [ECF No. 72-1 at 25]),

and because she did not personally vet Mr. Keogh before agreeing to hire him or personally

negotiate the fee arrangement (relying on her other counsel).[9] None of these details suggest, let

alone demonstrate, a conflict. Indeed, the R&R only finds fault in them by tying them to the

erroneous belief that Mr. Keogh was a "business associate" of Dr. Wexler's husband who Dr.

Wexler had allegedly agreed to give 40% of the fees when he did not represent her [ECF No. 74

at 10-11], and as shown both of those assumptions are categorically wrong. In short, the R&R's

conclusion that the facts demonstrate a conflict between Dr. Wexler or her husband and Mr.

Keogh is untenable, and thus, even if that issue had been referred to the Magistrate, the R&R's

conclusions on the point should be rejected.

### B. The R&R Applied the Wrong Standard to Evaluate Dr. Wexler's and Her Counsel's Adequacy – Applying the Correct Standard Demonstrates Dr. Wexler and Her Counsel Are Adequate Representatives.

The foregoing also demonstrates the R&R evaluated Dr. Wexler's and her counsel's

adequacy using an incorrect standard. The R&R states the mere "appearance of impropriety" or a

"potential" for conflict is enough to render Dr. Wexler and her counsel inadequate [ECF No. 74

at 6], but that is contrary to Second Circuit law. Instead, AT&T must prove a "fundamental"

conflict exists. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d. Cir. 2006) ("A conflict or

potential conflict alone will not, however, necessarily defeat class certification--the conflict must

be 'fundamental.'") (citing *Wal-Mart Stores, Inc. v. Visa USA, Inc.*, 280 F.3d 124, 145 (2d. Cir.

---

[9] A class representative is not required to know the rules governing fee arrangements or personally determine the qualifications of class counsel. *See Baffa v. Donaldson*, 222 F.3d 52, 61 (2d. Cir. 2000) ("The Supreme Court …. expressly disapproved of attacks on the adequacy of a class representative based on the representative's ignorance.") (citing *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 370-74 (1966) (plaintiff adequate despite "her limited education and her small knowledge about any of the English language, except the most ordinarily used words" or "that she did not understand any of the legal relationships or comprehend any of the business transactions described in the complaint.")).

2001)); *see also In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 306 (E.D. Mich. 2001) ("unsupported claims of possible conflicts of interest are routinely rejected by courts."). By contrast, relying on alleged "appearances" or "potentials" allows conjecture and innuendo to substitute for reason and evidence and harms the class the underlying Rules are supposed to protect.

Indeed, when faced with this exact same situation and applying the correct standard, another court found no lack of adequacy. In *Altman v. White House Black Market, Inc.*, Mr. Wexler attempted to represent his sister-in-law in a class action, the defendant argued this familial connection created a conflict of interest, Mr. Wexler withdrew, Mr. Keogh was asked to substitute by other counsel[10] (not Mr. Wexler) based on his class action successes in that area of the law, and both the magistrate and the district court found the termination of Mr. Wexler's involvement eliminated any actual conflict. *See Altman*, 2017 U.S. Dist. LEXIS 221939, *27 (N.D. Ga. Oct. 25, 2017) ("Mr. Wexler withdrew from the case before the motion for class certification had been filed, and apparently has not had, and will not have, any further involvement in the case."), *adopted as modified*, 2018 U.S. Dist. LEXIS 169828 at *11 (N.D.

---

[10] The other counsel was Spencer Fane who is primarily a Midwest defense firm that Mr. Keogh has litigated against in several consumer class actions. Ex. 1 at ¶9-10. *Altman* was a FACTA case where Mr. Keogh was asked to join the case because his firm has some of the largest class recoveries under FACTA, which includes a record of hard fought litigation in order to achieve those recoveries. *Id. See also Flaum v Doctors Associates,* 16-CV-61198-CMA (S.D. Fla.) ($30.9 million dollars); *Legg v. Laboratory Corporation of America Holdings*, No. 14-cv-61543-RLR (S.D. Fla., filed July 6, 2014) ($11 million dollars); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-JIC (S.D. Fla., filed Aug. 29, 2014) ($7.5 million dollars) and *Muransky v. Godiva Chocolatier, Inc.*, 15-cv-60716-WPD (S.D. Fla., filed Apr. 6, 2015) ($6.3 million dollars)(on appeal).

Ga. Feb. 12, 2018) (rejecting argument that Mr. Wexler's prior involvement created "a substantial/fundamental conflict").[11]

As shown above, there is no fundamental (or other) conflict here either. By contrast, Dr. Wexler has demonstrated herself to be a committed representative, reviewing motion practice, discussing the case with counsel, traveling from Atlanta to New York to participate in the evidentiary hearing (which required her to close her medical practice for two days), agreeing to undertake the duties associated with representing the class when she started this case in 2015, and presently reaffirming her commitment to those duties. [ECF No. 72-1 at 13-14, 34-35, 37, 53, and 56-57]. Likewise, Mr. Keogh's qualifications, experience, and success in TCPA class actions (including one of the largest settlements in history in a TCPA case against AT&T) are extensive and undisputed, and indeed that is why he was asked to join the case – not because of any relationship with Mr. Wexler. [*See* ECF No. 72-1 at 66 ("his firm is a superstar firm …")].[12] Thus, even if the issue of whether Dr. Wexler and her counsel satisfied the requirements of Federal Rule 23(a)(4) had been referred to the Magistrate, the R&R should have concluded they easily meet the test. However, by relying on non-existent facts and employing the wrong standard, the R&R erred as a matter of law, and should be overruled.

---

[11] *Also compare Steinberg v. Natinwide Mut. Ins. Co.*, 224 F.R.D. 67, 75-76 (E.D.N.Y. 2004) (attorney plaintiff adequate despite intending to seek fees for his work when initially prosecuting the case *pro se*) (vacated on other grounds); *Fischer v. Int'l Tel & Telp. Corp.*, 72 F.R.D. 170, 174 (E.D.N.Y. 1976) (plaintiff adequate even though he was class counsel's father); *Lewis v. Goldsmith*, 95 F.R.D. 15, 20 (D.N.J. 1982) (plaintiff adequate even though he was class counsel's nephew).

[12] As noted above, Mr. Keogh was lead class attorney in a prior TCPA class action against AT&T that resulted in one of the largest TCPA class settlements in history. *See Hageman v. AT&T Mobility LLC, et al.,* Case 1:13-cv-00050-DLC-RWA (D. MT.) (Co-Lead) (Final Approval Granted February 11, 2015 providing for a $45 million settlement for a class of 16,000 persons) and *Capital One Telephone Consumer Protection Act Litigation*, et al., 12-cv-10064 (N.D. Ill. Judge Holderman) (Liaison Counsel and additional Class Counsel)(Final Approval Granted February 12, 2015 for a $75 million settlement).

## CONCLUSION

Federal Rule 15 requires leave to amend be freely given as justice requires, and justice requires allowing Dr. Wexler amend the complaint to re-assert her class allegations because it is undisputed that: (a) the proposed amendment is proper on its face using a Rule 12(b)(6) standard; and (b) it would be unjust to deny leave to amend, as the TCPA claims at issue cannot feasibly be litigated on an individual basis, the class members' claims are otherwise time-barred at this late date, and thus denying leave to amend would allow the hundreds or thousands of TCPA violations AT&T committed to go unremedied.

By addressing Plaintiff's adequacy under Federal Rule 23(a)(4) instead of the sufficiency of the amended complaint under Federal Rule 15, the R&R addresses the wrong issue using the wrong standard, and violated the Magistrate's Act.

Even if Plaintiff's adequacy had been at issue, the R&R reached the wrong conclusion on that issue by relying on non-existent facts, and employing the wrong test. The actual facts demonstrate Plaintiff and her counsel are plainly adequate. For all of the above reasons, the R&R should be rejected, and Plaintiff's motion to amend should be granted.

Respectfully submitted,

*s/ Keith J. Keogh*
Keith J. Keogh, *Admitted Pro Hac Vice*
KEOGH LAW, LTD.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
Telephone: (312) 726-1092
Facsimile: (312) 726-1093
keith@keoghlaw.com

James Salvatore Giardina
The Consumer Rights Law Group, PLLC
3104 W. Waters Avenue, Suite 200

Tampa, Florida 33614-2877
Tel: (813) 435-5055 ext 101
Fax: (866) 535-7199
James@ConsumerRightsLawGroup.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on August 19, 2019, I filed **Plaintiff's Objection to Report and Recommendation** via the Court's CM/ECF system, which served a copy of the same upon all parties of record.

*/s/ Keith J. Keogh*
Keith J. Keogh